******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SUNG GAYNOR ET AL. *v.* HI-TECH HOMES ET AL.
(AC 35302)

Beach, Alvord and Pellegrino, Js.

*Argued October 23, 2013—officially released April 8, 2014*

(Appeal from Superior Court, judicial district of Stamford-Norwalk, Hon. David R. Tobin, judge trial referee.)

*Richard Stein*, self-represented, the appellant (defendant).

*Robert D. Russo*, with whom was *Elizabeth LaMura*, for the appellees (plaintiffs).

*Opinion*

ALVORD, J. The self-represented defendant, Richard Stein,[1] appeals from the judgment of the trial court, following a hearing in damages, awarding $72,022.19 to the plaintiffs, Sung Gaynor and Donald Gaynor. On appeal, the defendant claims that the court improperly (1) awarded damages for breach of the parties' agreement because he had completed all of the work, and (2) awarded attorney's fees under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. We affirm in part and reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's claims. On November 19, 2009, the plaintiffs commenced the present action against the defendant alleging breach of contract, unjust enrichment[2] and violation of CUTPA. In their complaint, the plaintiffs claimed that in 2004, they purchased real estate located in Westport with the intention of demolishing an existing structure, building a new residence in its place, and then selling the property at a profit. On October 19, 2005, the plaintiffs and the defendant signed an agreement that provided that the defendant would (1) deliver and erect a modular home on the plaintiffs' property for a specified price, and (2) supervise the completion of the modular home by subcontractors approved by the plaintiffs for additional compensation. The plaintiffs alleged that the defendant breached the agreement by charging more than the contract price, by failing to timely complete the construction and assembly of the modular home,[3] and by collecting payments for work that had not been completed.

The defendant filed an appearance as a self-represented party on December 15, 2009. On May 6, 2011, the plaintiffs filed a motion for default for the defendant's failure to file a responsive pleading, which was granted by the trial court clerk on May 17, 2011. On July 14, 2012, counsel for the plaintiffs filed a certificate of closed pleadings and claimed the matter for a hearing in damages to the court. On July 16, 2012, the court issued a notice of a hearing in damages to be held on September 20, 2012, at 9:30 a.m. The defendant did not file a motion to set aside the default pursuant to Practice Book § 17-42[4] nor did he file a notice of defenses pursuant to Practice Book § 17-34[5] prior to the scheduled hearing in damages.

The defendant attended the hearing in damages on September 20, 2012,[6] where the plaintiffs' counsel called Sung Gaynor and the defendant as witnesses. The defendant cross-examined Sung Gaynor, and he had the opportunity to object to exhibits submitted by the plaintiffs and to present his own exhibits for the court's consideration. Following the hearing, the court

requested the parties to file briefs on the computation of damages. On November 30, 2012, the court issued its memorandum of decision and awarded damages to the plaintiffs in the amount of $57,618, together with attorney's fees under CUTPA in the amount of $14,404.19. This appeal followed.

## I

As a defense to the breach of contract claim, the defendant claims that he "complied with all the conditions of the agreement." The defendant cannot prevail on his liability defense claims, however, because he failed to file an answer to the plaintiffs' complaint and was defaulted for his failure to plead. Further, he failed to file a notice of defenses that would have allowed him to offer evidence contradicting the allegations in the complaint. See Practice Book § 17-34.

"[C]ase law makes clear . . . that once the defendants had been defaulted and had failed to file a notice of intent to present defenses, they, by operation of law, were deemed to have admitted to all the essential elements in the claim and would not be allowed to contest liability at the hearing in damages. . . . A default admits the material facts that constitute a cause of action . . . and entry of default, when appropriately made, conclusively determines the liability of a defendant. . . . Following the entry of a default, all that remains is for the plaintiff to prove the amount of damages to which it is entitled. . . . At a minimum, the plaintiff in such instances is entitled to nominal damages." (Citations omitted; internal quotation marks omitted.) *Argentinis* v. *Fortuna*, 134 Conn. App. 538, 545–46, 39 A.3d 1207 (2012).

Accordingly, the defendant is unable to challenge his liability to the plaintiffs under the breach of contract claim. He is, however, entitled to challenge the determination of damages awarded by the court. "In an action at law, the rule is that the entry of a default operates as a confession by the defaulted defendant of the truth of the material facts alleged in the complaint which are essential to entitle the plaintiff to some of the relief prayed. It is not the equivalent of an admission of all of the facts pleaded. The limit of its effect is to preclude the defaulted defendant from making any further defense and to permit the entry of a judgment against him on the theory that he has admitted such of the facts alleged in the complaint as are essential to such a judgment. It does not follow that the plaintiff is entitled to a judgment for the full amount of the relief claimed. *The plaintiff must still prove how much of the judgment prayed for in the complaint he is entitled to receive.*" (Emphasis added; internal quotation marks omitted.) *Catalina* v. *Nicolelli*, 90 Conn. App. 219, 221, 876 A.2d 588 (2005).

"[T]he trial court has broad discretion in determining

damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." (Internal quotation marks omitted.) *Argentinis* v. *Fortuna*, supra, 134 Conn. App. 548. At the hearing in damages, Sung Gaynor testified that she paid the defendant for work that he had not completed. She submitted various invoices marked "paid," some of which were initialed or signed by the defendant, in support of her claim. The court, referring to those exhibits in its memorandum of decision, credited her testimony with respect to twelve items, which totaled $57,618.

We have carefully reviewed the testimony and the exhibits, and we find support in the record for eleven of the twelve items. Sung Gaynor's testimony was unequivocal that the defendant had been paid for the work and that the work had not been completed. "We cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) *Porter* v. *Morrill*, 108 Conn. App. 652, 664, 949 A.2d 526, cert. denied, 289 Conn. 921, 958 A.2d 152 (2008).

With respect to one of the items for which the court awarded damages, however, we conclude that its finding was clearly erroneous. The court awarded the plaintiffs $5750 for "process," and referred to exhibit seventeen as support for that finding. At the hearing in damages, the plaintiffs' attorney asked Sung Gaynor if any items on exhibit seventeen had not been completed. She responded: "Process." The plaintiffs' counsel then asked her for further clarification. She responded: "That is like stone. I don't know." When asked where the stones were placed, she said: "I think for the front house. . . . For the steps, yes." She testified that she paid $5750 for the process. When asked if any other items on exhibit seventeen had not been completed, she testified that she never received the garage door openers and that the gutters and leaders had not been installed.

Exhibit seventeen, which is an invoice, lists four items for which the plaintiffs were billed and submitted payment. With respect to the third item, the invoice reads "Process 4 [inches] - 6 [inches]." The invoice indicates that the amount paid was $5750. The fourth item on that invoice is "Asphalt 3 [inches] compacted." The amount paid was $4750. Sung Gaynor never claimed that the work with respect to the asphalt had not been completed.[7]

Exhibit nine is a payment schedule that was admitted as a full exhibit at the hearing. Dated seven months earlier than exhibit seventeen, it lists dozens of items and their estimated costs. One of the items is "process for driveway" and the estimated cost is $5750. Immedi-

ately following that item is "asphalt driveway" at an estimated cost of $4750. When exhibit nine and exhibit seventeen are read together, it is apparent that the process was to be used in connection with the installation of the asphalt driveway. The prices on both exhibits are identical. Because the plaintiffs did not claim that the defendant failed to complete the work on the asphalt driveway, it was clearly erroneous for the court to have determined that the defendant billed for "process" that had not been provided in the installation of the asphalt driveway. Sung Gaynor's testimony confirms that she was unclear what "process" was and where it was to be placed. Accordingly, the damages awarded should not have included $5750 for process.

## II

The defendant also claims that the court improperly awarded the plaintiffs $14,404.19 as attorney's fees under their CUTPA claim. We agree because the allegations in the plaintiffs' CUTPA count, even if taken as true, are insufficient on their face to state a cause of action under CUTPA.[8]

"An appellate court . . . may examine the allegations of a complaint to ascertain whether they are sufficient on their face to establish a valid claim for the relief requested. . . . Although the failure of a party to deny the material allegations of a pleading operates so as to impliedly admit the allegations, a default does not automatically trigger judgment for, or the relief requested by, the pleader. The pleader is entitled to an entry of judgment or a grant of relief as a function of the nonresponsive party's default and the attendant implied admission only when the allegations in the well pleaded filing are sufficient on their face to make out a claim for judgment or relief. . . . While an admission carries with it all reasonable implications of fact and legal conclusions . . . the admission cannot traverse beyond the bounds of the underlying pleading and admit allegations not made by the pleader; the pleading is, unless leave is granted to modify, the ceiling." (Citation omitted; internal quotation marks omitted.) *Argentinis* v. *Fortuna*, supra, 134 Conn. App. 546–47.

Before reviewing the allegations in the plaintiffs' CUTPA count, we set forth the principles applicable to CUTPA claims. "CUTPA provides in relevant part that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. General Statutes § 42-110b (a). Connecticut courts, when determining whether a practice violates CUTPA, will consider (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it

is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen). . . . Thus, a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . Whether a practice is unfair and thus violates CUTPA is an issue of fact. . . . The facts found must be viewed within the context of the totality of circumstances which are uniquely available to the trial court. . . . *Additionally, our Supreme Court has stated that [a]ll three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.*" (Emphasis added; internal quotation marks omitted.) *Kosiorek* v. *Smigelski*, 138 Conn. App. 695, 711, 54 A.3d 564 (2012), cert. denied, 308 Conn. 901, 60 A.3d 287 (2013).

"[N]ot every contractual breach rises to the level of a CUTPA violation." (Internal quotation marks omitted.) *Naples* v. *Keystone Building & Development Corp.*, 295 Conn. 214, 228, 990 A.2d 326 (2010). "[N]ot every misrepresentation rises to [the] level of [a] CUTPA violation." *Hudson United Bank* v. *Cinnamon Ridge Corp.*, 81 Conn. App. 557, 571, 845 A.2d 417 (2004). "There must be some nexus with a public interest, some violation of a concept of what is fair, some immoral, unethical, oppressive or unscrupulous business practice or some practice that offends public policy." *Muniz* v. *Kravis*, 59 Conn. App. 704, 715, 757 A.2d 1207 (2000). In the absence of allegations arising to such a level of conduct, the plaintiffs have failed to properly plead a cause of action under CUTPA. See id.

The interpretation of pleadings is an issue of law. *Stamford Landing Condominium Assn., Inc.* v. *Lerman*, 109 Conn. App. 261, 271, 951 A.2d 642, cert. denied, 289 Conn. 938, 958 A.2d 1246 (2008). "We conduct a plenary review of the pleadings to determine whether they are sufficient to establish a cause of action upon default." *Richey* v. *Main Street Stafford, LLC*, 110 Conn. App. 209, 220, 954 A.2d 889 (2008).

To support their claim of a CUTPA violation, the plaintiffs made the following allegations in the CUTPA count of their complaint: (1) the defendant "charged the plaintiffs more for the project than originally proposed"; (2) the defendant "charged the plaintiffs for work that had not [been] completed on the property"; and (3) the defendant "changed the scope of the project and dimensions of the house without properly explaining what they were doing to the plaintiffs."[9]

The plaintiffs' CUTPA count stated that the defendant, by engaging in the conduct specified in that count, "acted deceptively, in bad faith and unethically."[10] Notably, the plaintiffs did not allege that the defendant's practice "offend[ed] public policy" or that the defen-

dant's actions were "immoral," "oppressive," or "unscrupulous." Further, the plaintiffs did not allege that the defendant's practice "cause[d] substantial injury to consumers." See *Kosiorek* v. *Smigelski*, supra, 138 Conn. App. 711. In other words, of the three criteria to be considered for determining whether a practice violates CUTPA, the plaintiffs alleged only a portion of the second criterion, i.e., that the defendant acted "deceptively, in bad faith and unethically." As case law provides, "[a]ll three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) Id. Because the plaintiffs relied solely on the second criterion for their CUTPA claim, it follows that the "unethical" conduct alleged had to rise to the level necessary to constitute a CUTPA violation.

It is clear from the record that the trial court seriously questioned whether the plaintiffs' allegations properly alleged a CUTPA claim and whether the evidence presented at the hearing in damages allowed for a recovery under CUTPA. At the conclusion of the hearing, the court specifically requested that the plaintiffs address their CUTPA claim in their posthearing brief. The court expressed its concern with that particular claim: "I'm sorry, I don't see—I mean evidence of bad faith would indicate that he—I mean there has to be, I think, a pattern of that or—I just don't see that there is—usually it is based upon a violation of some principle of public policy or there are per se violations that might have been alleged, based upon failure to comply with either the New Home Act or the Home Improvement Act or various other things. But I just don't—I don't think what you have shown here is anything more than a standard dispute between a contractor and a homeowner. I mean I think that—it is an issue for the court, even though there is a default here. If there is a—if I have to find by law a CUTPA violation, I just don't see how, based on those allegations, that you satisfied—but anyway, you can brief that when you file your brief."[11]

Following the submission of posthearing briefs, the court issued its memorandum of decision. Although the plaintiffs sought $66,201 in direct damages for amounts paid for work that was not done, $314,706.20 in consequential damages for mortgage related expenses, $14,404.94 in attorney's fees and treble damages under CUTPA, the court awarded them $57,618 in direct damages and $14,404.19 in attorney's fees under CUTPA. The court awarded none of the requested consequential damages, and it expressly found that "double or triple damages, although available under [CUTPA], are not appropriate under the circumstances of this case."

The court's statements at the end of the hearing in damages, and the amount it awarded in comparison

with the amount sought by the plaintiffs, undermine the viability of the plaintiffs' CUTPA claim that relied solely on the second criterion of the cigarette rule. Although the plaintiffs claimed the defendant acted unethically and in bad faith, the court did "not see . . . evidence of bad faith"[12] and did not think that the plaintiffs "have shown . . . anything more than a standard dispute between a contractor and a homeowner."

Our plenary review of the complaint, together with our review of the transcript of the hearing in damages, compel the conclusion that the plaintiffs failed to allege facts in their complaint and failed to present evidence at the hearing in damages to support a claim beyond a mere breach of contract. Because the plaintiffs' allegations are insufficient to plead a proper cause of action under CUTPA, they are not entitled to an award of attorney's fees under CUTPA.

"[This] court may reverse . . . the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law." (Internal quotation marks omitted.) *Argentinis* v. *Fortuna*, supra, 134 Conn. App. 559. The court improperly awarded the plaintiffs $5750 for "process" as damages for breach of contract and improperly awarded the plaintiffs $14,404.19 as attorney's fees under CUTPA.

The judgment is reversed only with respect to the awards of $5750 in contractual damages and $14,404.19 in attorney's fees, and the case is remanded with direction to recalculate the damages award in accordance with this opinion. The judgment is affirmed in all other respects.

In this opinion PELLEGRINO, J. concurred.

[1] The plaintiffs brought this action against Hi-Tech Homes and Richard Stein. From the testimony of the witnesses and the representations made by the parties at the hearing in damages, the trial court determined that Hi-Tech Homes was a trade name and not a legal entity. The court concluded that the action had been brought against Richard Stein doing business as Hi-Tech Homes.

At oral argument before this court, Stein confirmed that he had been doing business as Hi-Tech Homes when he and the plaintiffs entered into the agreement at issue in this appeal. We therefore refer to Stein as the defendant in this opinion.

[2] The trial court found no basis for an award of additional damages to the plaintiffs under their claim of unjust enrichment.

[3] As noted by the trial court, the agreement did not contain a deadline for the completion of the second phase of construction. The plaintiffs' claims for damages all were related to the second phase of construction.

[4] Practice Book § 17-42 provides in relevant part: "A motion to set aside a default where no judgment has been rendered may be granted by the judicial authority for good cause shown upon such terms as it may impose."

[5] Practice Book § 17-34 (a) provides: "In any hearing in damages upon default, the defendant shall not be permitted to offer evidence to contradict any allegations in the plaintiff's complaint, except such as relate to the amount of damages, unless notice has been given to the plaintiff of the intention to contradict such allegations and of the subject matter which the defendant intends to contradict, nor shall the defendant be permitted to deny the right of the plaintiff to maintain such action, nor shall the defendant be permitted to prove any matter of defense, unless written notice has been

given to the plaintiff of the intention to deny such right or to prove such matter of defense.”

[6] The trial court provided a transcript of the hearing in damages, which is contained in the court file.

[7] The court did not include $4750 in its award of damages to the plaintiffs, and that amount is not at issue in this appeal.

[8] Following oral argument before this court, we ordered simultaneous supplemental briefs on the following issue: “Although the allegations of the plaintiffs’ CUTPA count were deemed admitted by the defendant, are the allegations sufficient to state a cause of action under CUTPA?”

[9] The trial court noted at the conclusion of the hearing in damages that there had been no testimony about the defendant decreasing the size of rooms without permission or any evidence as to resulting damages.

[10] The plaintiffs’ complaint primarily contains conclusory allegations. The plaintiffs are obligated to provide grounds for their claim of deceptive and unethical behavior, something more than mere conclusions and the formulaic recitation of the elements of a CUTPA cause of action. The defect in the plaintiffs’ complaint is their failure to plead a sufficient factual basis to support a claimed CUTPA injury. See *Bridgeport Harbour Place I, LLC* v. *Ganim*, 111 Conn. App. 197, 204, 958 A.2d 210, aff’d, 303 Conn. 205, 32 A.3d 296 (2011).

[11] This colloquy indicates that the trial court was well aware that the CUTPA count may not have been sufficiently pleaded, and the court brought that issue to the attention of the plaintiff’s counsel and the defendant. For that reason, this is not a situation where an issue has been raised for the first time on appeal and we declined to review it because it would have been unfair to the trial court: “[W]e will not decide an appeal on an issue that was not raised before the trial court. . . . To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge.” (Internal quotation marks omitted.) *McCann Real Equities Series XXII, LLC* v. *David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 527, 890 A.2d 140, cert. denied, 277 Conn. 928, 895 A.2d 798 (2006).

The dissent objects to our review of the CUTPA issue because it concludes that it was not “adequately raised to this court by any party” and that, even if the defendant’s argument could be broadly read to include it, the claim “most clearly was inadequately briefed.” It is true that the defendant did not phrase his claim with precision nor did he brief it in an articulate and thorough manner. The defendant, however, was self-represented at the time of trial and during the appeal process. We, therefore, have afforded him some leeway and have chosen to read his claim and argument broadly so as to include the CUTPA issue addressed in this opinion.

“[I]t is our policy to give leeway to pro se litigants regarding their adherence to the rules of this court.” *In re Brittany J.*, 100 Conn. App. 329, 330, 917 A.2d 1024 (2007). “The modern trend . . . is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . The courts adhere to this rule to ensure that pro se litigants receive a full and fair opportunity to be heard, regardless of their lack of legal education and experience.” (Internal quotation marks omitted.) *Mourning* v. *Commissioner of Correction*, 120 Conn. App. 612, 624–25, 992 A.2d 1169, cert. denied, 297 Conn. 919, 996 A.2d 1192 (2010).

[12] “Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one’s rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose.” (Internal quotation marks omitted.) *MacMillan* v. *Higgins*, 76 Conn. App. 261, 270, 822 A.2d 246, cert. denied, 264 Conn. 907, 826 A.2d 177 (2003).