******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

HOSPITAL MEDIA NETWORK, LLC *v.* JAMES G.
HENDERSON ET AL.
(AC 40197)

Alvord, Keller and Flynn, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant H, its former
employee, for, inter alia, breach of fiduciary duty. H was employed by
the plaintiff as its chief revenue officer until the plaintiff terminated H's
employment on September 5, 2013. The plaintiff thereafter brought the
present action, claiming, inter alia, that H had a fiduciary relationship
with the plaintiff and that H breached his fiduciary duty by working for
G Co., a private equity investment firm, to raise capital to acquire C
Co., which was involved in the same business sector as the plaintiff,
without the plaintiff's permission or knowledge. G Co.'s acquisition of
C Co. closed on September 26, 2013, upon which H was paid a $150,000
finder's fee by either G Co. or C Co., awarded a three year consulting
contract with C Co. at $50,000 annually, and given the opportunity to
purchase restricted stock of C Co. After H was defaulted for failure to
comply with a discovery order, the trial court granted the plaintiff's
motion for judgment on the default. Following a hearing in damages,
the trial court awarded damages against H in the amount of $454,579.76
on the plaintiff's claim of breach of fiduciary duty, which included the
entire salary and bonus H received from the plaintiff as a full-time
employee in 2013, the finder's fee paid to H by G Co. or C Co., the
consulting fees paid to H by C Co. from 2013 to 2016, and the value of
the C Co. stock at the time of H's purchase. On H's appeal to this court,
*held* that the trial court abused its discretion in ordering a wholesale
forfeiture of the salary and bonus paid to H by the plaintiff in 2013, and
requiring H to disgorge in full all profits received from C Co. and G Co.,
as the award of monetary relief was disproportionate to the misconduct
at issue and failed to take into account the equities in the case: although
the remedies of forfeiture of compensation paid by an employer and
disgorgement of amounts received by the employee from third parties
are available when an employer has proven a breach of the fiduciary
duty of loyalty by the employee, the imposition of those remedies is
dependent on the equities of the particular case, and trial court's findings
here that H provided significant value to the plaintiff by contributing
to the plaintiff's rapid growth, despite his breach of fiduciary duty, and
that H did not act with a bad motive or reckless indifference, but rather
failed to comprehend or ignored the differences between being an
employee and a consultant, should have weighed in favor of a measured
forfeiture rather than H's full salary and bonus; moreover, full dis-
gorgement of the benefits conferred on H by C Co. and G Co. was
improper, as H rendered some of the services for which he was compen-
sated by C Co. and G Co. both prior and subsequent to his full-time
employment with the plaintiff, and the commensurate portion of the
compensation received in exchange for those services should not have
been included in the court's order of disgorgement.

Argued September 18, 2018–officially released January 8, 2019

*Procedural History*

Action to recover damages for, inter alia, breach of
fiduciary duty, and for other relief, brought to the Supe-
rior Court in the judicial district of Stamford-Norwalk,
where the defendants filed a counterclaim; thereafter,
the court, *Hon. A. William Mottolese,* judge trial referee,
granted the plaintiff's motion for default against the
defendants and for nonsuit on the defendants' counter-
claim; subsequently, the court, *Hon. A. William Mot-
tolese*, judge trial referee, granted the plaintiff's motion

for judgment on the default and rendered judgment of nonsuit as to the defendants' counterclaim; thereafter, following a hearing in damages, the court, *Hon. Taggart D. Adams*, judge trial referee, rendered judgment for the plaintiff, from which the defendants appealed to this court. *Reversed in part; further proceedings.*

*James G. Henderson*, self-represented, with whom was *Taylor Henderson*, self-represented, the appellants (defendants).

*Gary S. Klein*, with whom was *Liam S. Burke*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The self-represented defendant, James G. Henderson, appeals from the judgment of the trial court, following a hearing in damages upon default as to liability, awarding the plaintiff, Hospital Media Network, LLC, monetary relief pursuant to the equitable theories of forfeiture and disgorgement in the amount of $454,579.76 on its claim of breach of fiduciary duty.[1] On appeal, the defendant claims that the court's award was improper because the plaintiff failed to prove it suffered any damages. We conclude that the court abused its discretion in ordering a wholesale forfeiture of the defendant's salary and bonus and requiring the defendant to disgorge in full all profits received from third parties, such that the award, in the full amount requested by the plaintiff, was inequitable. Accordingly, we reverse in part the judgment of the court as to the award of damages against James Henderson and remand the case for a new hearing in damages. We otherwise affirm the court's judgment.

The following facts and procedural history are relevant to the resolution of this appeal. In November, 2013, the plaintiff commenced this action alleging that the defendant, its former employee, violated the Connecticut Uniform Trade Secrets Act (CUTSA), General Statutes § 35-50 et seq., committed tortious interference with the plaintiff's business and contractual relations, breached the duty of employee loyalty, breached his fiduciary duty, and usurped corporate opportunities of the plaintiff. The defendant was defaulted, and the trial court held a hearing in damages. After the hearing, the court awarded the plaintiff damages solely on its claim of breach of fiduciary duty,[2] the essential elements of which were admitted by virtue of the defendant's default.

With respect to its breach of fiduciary duty count, the plaintiff alleged that it employed the defendant as its chief revenue officer and paid him substantial compensation from January 1 to September 2013. On September 5, 2013, the plaintiff terminated the defendant's employment "for cause for several reasons including, without limitation [the defendant's] actively working for various companies unrelated to [the plaintiff] for his own benefit and without [the plaintiff's] permission or knowledge during regular business hours." Specifically, it alleged that the defendant worked for or on behalf of Generation Partners (Generation), a private equity investment firm, "to raise capital for other digital media companies including but not limited to" Captivate Network Holdings, Inc. (Captivate), and used the plaintiff's computers and infrastructure to conduct business for those other digital media companies without the plaintiff's permission or knowledge. The plaintiff claimed that the defendant played golf on a social basis and otherwise took time off during regular business

hours without the plaintiff's permission.

The plaintiff further alleged that the parties had a fiduciary relationship "by virtue of the trust and confidence" the plaintiff placed in the defendant as its chief revenue officer, a senior executive position. Among the duties allegedly owed to the plaintiff were the duty of loyalty, the duty to act in good faith, and the duty to act in the best interest of the plaintiff. The plaintiff asserted that the defendant breached these duties in advancing his own interests to the detriment of the plaintiff. Lastly, the plaintiff alleged that the defendant's breach caused it to sustain damages.[3] The plaintiff sought, inter alia, compensatory and punitive damages.

The defendant answered and filed an amended counterclaim, alleging breach of contract, wrongful termination, misrepresentation and deceit, and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The defendant requested, inter alia, compensatory and punitive damages.

The parties engaged in discovery disputes, resulting in an April, 2016 order from the court that the parties "confer face-to-face in an effort to resolve these discovery disputes, bearing in mind that reasonable good faith efforts at compromise are essential to every discovery dispute." On June 27, 2016, after finding the defendant's objections to the plaintiff's discovery requests "intentionally evasive and intended to obstruct the process," the court ordered full compliance within thirty days. On July 28, 2016, the plaintiff filed a motion for default and nonsuit on the basis that the defendant had failed to comply with the court's June 27 order. The court granted the motion, finding that the "[p]laintiff is clearly prejudiced by these obstructive tactics and the only appropriate remedy proportionate to the infraction is default." On September 26, 2016, the court rendered judgment for the plaintiff on its affirmative claims and against the defendant on his counterclaim.

On September 27, 2016, the court held a hearing in damages. The plaintiff presented the testimony of Andrew Hertzmark, an employee of Generation;[4] Christopher Culver, chief executive officer of the plaintiff; Taylor Henderson; and James Henderson. At the conclusion of the hearing, the court requested posttrial briefing, which the parties submitted on October 18, 2016.

On February 15, 2017, the court issued a memorandum of decision. In its memorandum, the court reviewed the evidence presented during the hearing in damages. From 2011 to 2013, the defendant was a consultant to the plaintiff, and the plaintiff compensated the defendant by making payments to his consulting company, St. Ives Development Group. On January 1, 2013, the defendant became a full-time employee and chief revenue officer of the plaintiff. The plaintiff paid him a salary of over $12,000 per month,

totaling $121,579.84 in 2013, and also paid him a sales target bonus of $25,000 in May, 2013. That bonus was paid to St. Ives Development Group.[5] Just weeks after becoming a full-time employee of the plaintiff, the defendant communicated with Hertzmark, identifying the plaintiff as a possible investment target for his fund, and included the plaintiff's revenues and possible buy-out price.

In 2013, Hertzmark was working on a potential transaction in which Generation would acquire Captivate from Gannett Company, Inc. (Gannett).[6] Both Captivate and the plaintiff are involved in the same business sector. While Captivate sells advertising space on digital monitors in elevators, the plaintiff sells advertising space on monitors located in hospitals and medical offices. Hertzmark testified that the defendant assisted with the Captivate acquisition, giving a presentation with Hertzmark to Gannett and helping formulate the letter of intent memorializing Generation's proposed purchase of Captivate.[7] In March, 2013, Hertzmark e-mailed the defendant stating that Generation's letter of intent was not shared with the head of Captivate and, therefore, Gannett was surprised to learn that the head of Captivate was aware of plans to install the defendant as the new chief executive officer of Captivate once that business was acquired by Generation.[8] In March and April, 2013, the defendant corresponded with Hertzmark regarding Captivate's attributes as an investment and reviewed due diligence information provided by Captivate from February through April, 2013. He told Hertzmark on July 6, 2013, that he wanted his attorney to review his Captivate employment contract once completed.

The plaintiff terminated the defendant's employment on September 5, 2013, and Generation's acquisition of Captivate from Gannett closed on September 26, 2013. Upon the transaction's closing, the defendant was paid a finder's fee of $150,000, awarded a consulting contract with Captivate for three years at $50,000 annually, and given the opportunity to purchase restricted stock of Captivate.[9]

The court found that "during the events in this case [the defendant] either never comprehended or ignored the different consequences of being a company employee and being a consultant," referring to the defendant's testimony in which he described himself as a "consultant employee" of the plaintiff. The court referenced the testimony of Culver, the plaintiff's chief executive officer, that the plaintiff's sales increased from $1.9 million in 2010 to $6.6 million in 2013. The court additionally noted Culver's testimony that the plaintiff "held itself out to be the fastest growing company of its kind during this period" and his recognition that the defendant was part of this "terrific growth." Crediting Culver's testimony, the court found that

"there was a sharp increase in the company's sales" while the defendant worked for the plaintiff.

Turning to the plaintiff's claimed damages, the court first found that the plaintiff was not entitled to the defendant's "compensation from Captivate" on the theory that the defendant usurped a corporate opportunity. Specifically, the court found that the opportunity the defendant took was "employment" at Captivate, which was not an opportunity available to the plaintiff. The court determined, however, that damages were appropriate on the plaintiff's claim of the breach of fiduciary duty of loyalty, and measured the damages "by the gain to the faithless employee."[10] The court awarded damages against the defendant in the total amount of $454,579.76, including $146,579.84, representing the defendant's 2013 salary ($121,579.84) and bonus ($25,000); $150,000, representing the finder's fee paid by Generation or Captivate; $150,000, representing the consulting fees to be paid by Captivate from 2013 through 2016; and $7999.92, representing the value of the Captivate stock at the time of purchase.[11]

The court declined to award attorney's fees under CUTSA, finding that "there was minimal or no misappropriation of trade secrets in this case, and no justifiable basis for awarding fees under that statute." The court further declined to award attorney's fees as punitive damages under the common law, on the basis that the defendant "has been penalized severely already by this court's decision. To add hundreds of thousands of dollars more, would not only be punitive, it would be overkill." It additionally found that although the defendant's actions were "uninformed, and even stupid," his conduct did not meet the common-law standard for awarding attorney's fees, which, the court observed, requires that the conduct be "outrageous, done with a bad motive, or with reckless indifference." This appeal followed.

On appeal, the defendant claims that the plaintiff was "unable to offer proof as to any of [its] damages by a preponderance of [the] evidence" and therefore is "not entitled to any award of damages."

We begin by addressing the effect of the default. The defendant was defaulted for failure to comply with the court's discovery order, and he concedes that he did not file a notice of intent to present defenses.[12] "[C]ase law makes clear . . . that once the defendants had been defaulted and had failed to file a notice of intent to present defenses, they, by operation of law, were deemed to have admitted to all the essential elements in the claim and would not be allowed to contest liability at the hearing in damages." (Internal quotation marks omitted.) *Abbott Terrace Health Center, Inc.* v. *Parawich*, 120 Conn. App. 78, 85, 990 A.2d 1267 (2010). "A default admits the material facts that constitute a cause of action . . . and entry of default, when appropriately

made, conclusively determines the liability of a defendant. . . . If the allegations of the plaintiff's complaint are sufficient on their face to make out a valid claim for the relief requested, the plaintiff, on the entry of a default against the defendant, need not offer evidence to support those allegations." (Internal quotation marks omitted.) *Perez* v. *Carlevaro*, 158 Conn. App. 716, 725, 120 A.3d 1265 (2015); see also *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 130 n.9, 74 A.3d 1225 (2013). "Following the entry of a default, all that remains is for the plaintiff to prove the amount of damages to which it is entitled. . . . At a minimum, the plaintiff in such instances is entitled to nominal damages." (Internal quotation marks omitted.) *Gaynor* v. *Hi-Tech Homes*, 149 Conn. App. 267, 271, 89 A.3d 373 (2014).

Because of the default entered against the defendant, he is precluded from challenging his liability to the plaintiff under the claims pleaded. "In an action at law, the rule is that the entry of a default operates as a confession by the defaulted defendant of the truth of the material facts alleged in the complaint which are essential to entitle the plaintiff to some of the relief prayed. It is not the equivalent of an admission of all of the facts pleaded. The limit of its effect is to preclude the defaulted defendant from making any further defense and to permit the entry of a judgment against him on the theory that he has admitted such of the facts alleged in the complaint as are essential to such a judgment. It does not follow that the plaintiff is entitled to a judgment for the full amount of the relief claimed. *The plaintiff must still prove how much of the judgment prayed for in the complaint he is entitled to receive.*" (Emphasis in original; internal quotation marks omitted.) Id., 271–72.

Throughout his principal and reply briefing and during oral argument before this court, the defendant raises arguments challenging his liability to the plaintiff. Specifically, he argues that the plaintiff waived its claims of breach of the duty of loyalty when hiring the defendant, in that the plaintiff hired him with full knowledge that he would continue to consult for other companies. The central contention expressed in the defendant's reply brief is that the duty of loyalty never applied to his relationship with the plaintiff, and that "[w]here there was no duty of faithfulness, loyalty, or an agency or fiduciary relationship implicit in the parties' agreement, logically there cannot be any breach of it. Without a breach, damages are not available as a matter of fact and law." Such arguments are unavailing given the entry of a default, which operates as an admission by the defendant of the facts alleged in the complaint that are essential to the judgment rendered in favor of the plaintiff on its claim of breach of fiduciary duty.

The defendant is entitled, however, to challenge the determination of monetary relief awarded by the court.

Our standard of review is as follows. "As a general matter, [t]he trial court has broad discretion in determining whether damages are appropriate. . . . Its decision will not be disturbed on appeal absent a clear abuse of discretion. . . . Our review of the amounts of monetary awards rendered pursuant to various equitable doctrines is similarly deferential."[13] (Citation omitted; internal quotation marks omitted.) *Wall Systems, Inc.* v. *Pompa*, 324 Conn. 718, 729, 154 A.3d 989 (2017).

Our Supreme Court, in *Wall Systems, Inc.* v. *Pompa*, supra, 324 Conn. 732, recently provided guidance on the equitable remedies available to an employer upon proving that an employee has breached his fiduciary duty of loyalty. In *Wall Systems, Inc.*, the defendant worked for the plaintiff building contractor as head of its exterior insulation finish systems division. Id., 722. Without informing the plaintiff, he began working simultaneously for a competitor, performing estimating work for which he earned approximately $90,000 over the course of five years. Id., 723. The plaintiff also submitted bids for some of the same jobs that the defendant had estimated for its competitor. The defendant additionally accepted kickbacks from a subcontractor in connection with his work for the plaintiff. Id., 724. The plaintiff terminated the defendant's employment and filed an action alleging that he breached his duty of loyalty to the plaintiff.

After a bench trial, the court awarded damages to the plaintiff arising out of the kickback scheme in the amounts of $14,400, for jobs on which the defendant had increased the contract price, and $43,200, representing treble damages as a result of the defendant's statutory theft. Id., 726. The trial court declined to require the defendant to forfeit the compensation he earned from either the plaintiff or its competitor, citing a lack of evidence that the plaintiff had been harmed due to the defendant's working for the competitor, and finding that the defendant had worked for the competitor on his own time. Id., 726–27. On appeal, the plaintiff claimed as a matter of law that the trial court improperly declined to order the defendant to forfeit his earnings from the plaintiff and to require the defendant to disgorge the compensation he received from the competitor. Id., 727–28. Our Supreme Court, recognizing that the remedies of forfeiture and disgorgement are available once an employer has proven breach of the fiduciary duty of loyalty, nevertheless held that the remedies are not mandatory, but "are discretionary ones whose imposition is dependent upon the equities of the case at hand." Id., 729.

The court in *Wall Systems, Inc.* provided: "The law of restitution and unjust enrichment . . . creates a basis for an [employee's] liability to [an employer] when the [employee] breaches a fiduciary duty, even when no loss to the employer is shown. 2 Restatement (Third),

[Agency] § 8.01 comment (d) (1), p. 258 [(2006)]. More specifically, if an employee realizes a material benefit from a third party in connection with his breach of the duty of loyalty, the employee is subject to liability to deliver the benefit, its proceeds, or its value to the [employer]. Id.; see also id., § 8.02, comment (e), p. 285. Accordingly, [a]n employee who breaches the fiduciary duty of loyalty may be required to disgorge any profit or benefit he received as a result of his disloyal activities, regardless of whether the employer has suffered a corresponding loss. . . .

"Additionally, an employer may seek forfeiture of its employee's compensation. *Cameco, Inc.* v. *Gedicke*, 157 N.J. 504, 519, 724 A.2d 783 (1999); 2 Restatement (Third), supra, § 8.01, comment (d) (2), pp. 258–59. Forfeiture of a disloyal employee's compensation, like disgorgement of material benefits received from third parties, is an equitable rather than a legal remedy. . . . It is derived from a principle of contract law: if the employee breaches the duty of loyalty at the heart of the employment relationship, he or she may be compelled to forego the compensation earned during the period of disloyalty. The remedy is substantially rooted in the notion that compensation during a period in which the employee is disloyal is, in effect, unearned. . . . Forfeiture may be the only available remedy when it is difficult to prove that harm to [the employer] resulted from the [employee's] breach or when the [employee] realizes no profit from the breach. In many cases, forfeiture enables a remedy to be determined at a much lower cost to litigants. Forfeiture may also have a valuable deterrent effect because its availability signals [employees] that some adverse consequence will follow a breach of fiduciary duty. 2 Restatement (Third), supra, § 801, comment (d) (2), p. 259 . . . . Notably, however, even in cases in which a court orders forfeiture of compensation, the forfeiture normally is apportioned, that is, it is limited to the period of time during which the employee engaged in disloyal activity." (Citations omitted; internal quotation marks omitted.) Id., 733–34.

Our Supreme Court made clear that the remedies of forfeiture of compensation and disgorgement of material benefits are discretionary, especially in "cases involving breaches of the duty of loyalty due to their highly fact specific nature." Id., 736. The court further articulated the following nonexhaustive list of factors a trial court should consider in determining whether to invoke forfeiture and disgorgement: "the employee's position, duties and degree of responsibility with the employer; the level of compensation that the employee receives from the employer; the frequency, timing and egregiousness of the employee's disloyal acts; the wilfulness of the disloyal acts; the extent or degree of the employer's knowledge of the employee's disloyal acts; the effect of the disloyal acts on the value of the employ-

ee's properly performed services to the employer; the potential for harm, or actual harm, to the employer's business as a result of the disloyal acts; the degree of planning taken by the employee to undermine the employer; and the adequacy of other available remedies, as herein discussed. . . . The several factors embrace broad considerations which must be weighed together and not mechanically applied. . . . [T]he judicial task is to search for a fair and reasonable solution in light of the relevant considerations . . . and to avoid unjust enrichment to either party. . . . Additionally, when imposing the remedy of forfeiture of compensation, depending on the circumstances, a trial court may in its discretion apply apportionment principles, rather than ordering a wholesale forfeiture that may be disproportionate to the misconduct at issue. . . . Conversely, the court may conclude that all compensation should be forfeited because the employee's unusually egregious or reprehensible conduct pervaded and corrupted the entire [employment] relationship." (Citations omitted; internal quotation marks omitted.) Id., 737–38.

The factors articulated in *Wall Systems, Inc.*, are designed to assist the trial court in reaching "a fair and reasonable solution" and to "avoid unjust enrichment to either party." Id., 738. Specifically, the court in *Wall Systems, Inc.* noted that in certain circumstances the application of apportionment principles may be more appropriate than "a wholesale forfeiture that may be disproportionate to the misconduct at issue." Id. In the present case, we conclude that the award of monetary relief was disproportionate to the misconduct at issue and failed to take into account the equities of the case at hand.[14]

We focus our analysis on the court's award pursuant to the doctrine of forfeiture. The court ordered a wholesale forfeiture of the defendant's salary for the entire duration of his full-time employment with the plaintiff, $121,579.84, and the entire amount of what the plaintiff itself categorized as the defendant's achieving his "sales target bonus," $25,000, which it paid to the defendant as an independent contractor through his consulting company. Specifically, Culver testified during the hearing in damages that the $25,000 bonus paid to the defendant in May, 2013, was compensation for "hitting a target of four . . . million in sales for that year."

Although the court in the present case did not have the benefit of the *Wall Systems, Inc.*, factors at the time it rendered its decision, our Supreme Court noted that the factors had been "gleaned from existing jurisprudence." Id., 737. The court did, in its memorandum of decision, make factual findings, fully supported by the record and corresponding with the *Wall Systems, Inc.*, factors, but ultimately failed to give proper weight to these findings in fashioning its damages award. Specifically, the trial court expressly recognized the value of

the services the defendant provided the plaintiff, finding "a sharp increase in the company's sales" while the defendant worked for the plaintiff, and concluding that the defendant was part of this "terrific growth." That finding corresponds with the *Wall Systems, Inc.*, factor prompting consideration of "the effect of the disloyal acts on the value of the employee's properly performed services to the employer." The court's finding, in essence a recognition that the defendant was providing extraordinary value to the plaintiff despite his breach of fiduciary duty, should have weighed in favor of a measured forfeiture, not the defendant's full salary and bonus.

Indeed, as the court in *Wall Systems, Inc.*, explained, forfeiture as a remedy "is substantially rooted in the notion that compensation during a period in which the employee is disloyal is, in effect, unearned." Id., 734. In accord with this principle, courts in other states have recognized that an employee may be entitled to retain some portion of his compensation where the breach is minor or the employee has provided value to the employer in the form of services properly rendered. See *Cameco, Inc.* v. *Gedicke*, supra, 157 N.J. 521 ("if the employee's breach is minor, involves only a minimal amount of time, or does not harm the employer, the employee may be entitled to all or substantially all of his or her compensation"); *Futch* v. *McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 609, 518 S.E.2d 591 (1999) (noting that "[t]he goal is to avoid the unjust enrichment of either party by examining factors such as . . . the value to the employer of the services properly rendered by the employee").

The 2 Restatement (Third), supra, § 8.01 comment (d) (2) also suggests that forfeiture in full is disproportionate under certain circumstances. It provides: "Although forfeiture is generally available as a remedy for breach of fiduciary duty, cases are divided on how absolute a measure to apply. Some cases require forfeiture of all compensation paid or payable over the period of disloyalty, while others permit apportionment over a series of tasks or specified items of work when only some are tainted by the agent's disloyal conduct. The better rule permits the court to consider the specifics of the agent's work and the nature of the agent's breach of duty and to evaluate whether the agent's breach of fiduciary duty tainted all of the agent's work or was confined to discrete transactions for which the agent was entitled to apportioned compensation."

In the present case, the court also made a finding related to the wilfulness of the defendant's actions, another of the *Wall Systems, Inc.*, factors. The court characterized the defendant's actions as "uninformed, and even stupid." By declining to award attorney's fees as punitive damages under the common law on this basis, it is evident that the court rejected any notion

that the defendant's conduct was "outrageous, done with a bad motive, or with reckless indifference." The court also found that the defendant had "either never comprehended or ignored the different consequences of being a company employee and being a consultant," referring to the defendant's testimony in which he described himself as a "consultant employee" of the plaintiff. Despite recognizing that the defendant potentially "never comprehended" the distinction between serving as an employee and a consultant and finding that the defendant's behavior was "uninformed" rather than done with a bad motive, the court failed to give proper weight to these findings when fashioning its award.

We acknowledge that a trial court "may conclude that all compensation should be forfeited because the employee's unusually egregious or reprehensible conduct pervaded and corrupted the entire [employment] relationship." (Internal quotation marks omitted.) *Wall Systems, Inc.* v. *Pompa*, supra, 324 Conn. 738. The court in *Wall Systems, Inc.*, recognized that "if the compensation received by a disloyal employee is *not* apportioned to particular time periods or items of work, and his or her breach of the duty of loyalty is *wilful and deliberate*, forfeiture of his or her entire compensation may result." (Emphasis altered.) Id., 734 n.11. In the present case, however, the trial court's express factual findings reflect an uninformed employee who continued to provide significant value to his employer despite his breach of fiduciary duty. These findings, clearly not in the nature of corrupt or reprehensible behavior, should have weighed in favor of an award of something less than full forfeiture.

We further note briefly that forfeiture was not the sole remedy available to the court, as the court had before it evidence of the benefit the defendant received from third parties Generation and Captivate. Cf. id., 734 ("[f]orfeiture may be the only available remedy when . . . the [employee] realizes no profit from the breach"). The court found those benefits, including the finder's fee, value of the stock purchased, and the three year consulting agreement, to amount to a total of $307,992.92, and ordered disgorgement in full. That amount, however, appears to reflect compensation that the defendant had earned for consulting that he performed both prior to and subsequent to his nine month period of full-time employment with the plaintiff.[15]

To the extent the defendant rendered some of the services for which he was compensated by third parties both prior and subsequent to his full-time employment with the plaintiff, some commensurate portion of the compensation received in exchange for those services cannot be said to have been gained by the defendant's breach and should not have been included in the court's order of disgorgement. See id., 733 ("[a]n employee who

breaches the fiduciary duty of loyalty may be required to disgorge any profit or benefit he received *as a result of his disloyal activities*" [emphasis added; internal quotation marks omitted]); *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 433, 460, 970 A.2d 592 (2009) (explaining that restitutionary remedies are "not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep" [internal quotation marks omitted]); *XL Specialty Ins. Co.* v. *Carvill America, Inc.*, Superior Court, judicial district of Middlesex, Complex Litigation Docket, Docket No. X04-CV-04-4000148-S (May 31, 2007) (43 Conn. L. Rptr. 536) ("[t]he principal is entitled to any loss resulting from or caused by the breach, and the agent may as well be required to forfeit any profit gained *by the breach*" [emphasis in original]).

"[C]ourts exercising their equitable powers are charged with formulating fair and practical remedies appropriate to the specific dispute. . . . In doing equity, [a] court has the power to adapt equitable remedies to the particular circumstances of each particular case. . . . [E]quitable discretion is not governed by fixed principles and definite rules . . . . Rather, implicit therein is conscientious judgment directed by law and reason and looking to a just result." (Citations omitted; internal quotation marks omitted.) *Wall Systems, Inc.* v. *Pompa*, supra, 324 Conn. 736. In fashioning its damage award, the court failed to formulate a remedy appropriate to the particular circumstances of this case, in light of its own factual findings which weighed in favor of a measured award. Ultimately, the award of wholesale forfeiture and disgorgement in full failed to take into account the equities of the case at hand and did not achieve a just result.

The judgment is reversed only as to the award of damages against James G. Henderson, and the case is remanded for a new hearing in damages. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The court additionally awarded the plaintiff $2000 in damages against Taylor Henderson, who was also named as a defendant in this action, and $21,922.50 in attorney's fees against James Henderson and Taylor Henderson jointly and severally. Although James and Taylor Henderson jointly filed briefing to this court, neither James nor Taylor challenges the judgment against Taylor or the award of attorney's fees. Because the appeal challenges only the judgment against James Henderson, we accordingly refer to James Henderson as the defendant.

[2] Although the plaintiff alleged breach of the duty of employee loyalty separate from its claim of breach of fiduciary duty, it specified in its breach of fiduciary duty count that one such fiduciary duty breached was the duty of loyalty. In its memorandum of decision, the court awarded damages for "breach of fiduciary duty owed to the corporation" and cited case law and secondary sources addressing the fiduciary duty of loyalty. Our Supreme Court likewise has treated the duty of loyalty as a fiduciary duty in the employment context. See *Wall Systems, Inc.* v. *Pompa*, 324 Conn. 718, 733, 154 A.3d 989 (2017).

[3] Although not necessary to resolving the present appeal from the judgment awarding damages on the plaintiff's breach of fiduciary duty claim, the

essential elements of the plaintiff's remaining claims were also admitted by virtue of the defendant's default. Although the court declined to award the plaintiff damages on its remaining claims, the plaintiff has not cross appealed from the court's refusal to award damages on the claims alleging a violation of CUTSA, tortious interference with the plaintiff's business and contractual relations, breach of the duty of employee loyalty, and usurpation of corporate opportunities.

[4] According to Hertzmark, Generation is a private equity firm that had been interested in investing in the plaintiff at one point in time but decided not to do so in 2011.

[5] Aside from explaining that it paid the bonus through St. Ives Development Group at the defendant's request, the plaintiff's counsel during oral argument before this court had no additional explanation for why, after having made the defendant a full-time employee as of January 1, 2013, it would pay the bonus to the defendant as an independent contractor through his consulting company.

[6] Gannett's point person for the transaction was Douglas Kuckelman, a member of Gannett's corporate development department. The defendant corresponded via e-mail with Kuckelman in late December, 2012, and early 2013.

[7] Although Hertzmark knew that the defendant had a connection with the plaintiff, he maintained that he was not aware that the defendant was employed full-time by the plaintiff in 2013. He further stated that the defendant told him he was a consultant for the plaintiff.

[8] Generation considered the defendant as a potential candidate for chief executive officer of Captivate, and the defendant provided his resume to Generation on May 19, 2013.

[9] Hertzmark did not know whether the $150,000 finder's fee was paid by Generation or Captivate.

[10] In its posttrial brief, the plaintiff expressly abandoned its claim for expense reimbursements. Specifically, it no longer sought "damages for [James] Henderson's 2013 reimbursed expenses totaling $17,718.33, or Taylor Henderson's 2012 and 2013 reimbursed expenses totaling $11,887.90 and $11,498.10 respectively."

[11] The court additionally awarded attorney's fees in the amount of $21,922.50, representing the time the plaintiff's counsel spent addressing the parties' discovery disputes. The defendant does not challenge this portion of the award on appeal. See footnote 1 of this opinion.

[12] "After a default, a defendant may still contest liability. Practice Book §§ 17-34, 17-35 and 17-37 delineate a defendant's right to contest liability in a hearing in damages after default. Unless the defendant provides the plaintiff written notice of any defenses, the defendant is foreclosed from contesting liability. . . . If written notice is furnished to the plaintiff, the defendant may offer evidence contradicting any allegation of the complaint and may challenge the right of the plaintiff to maintain the action or prove any matter of defense. . . . This approximates what the defendant would have been able to do if he had filed an answer and special defenses." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Schwartz* v. *Milazzo*, 84 Conn. App. 175, 178–79, 852 A.2d 847, cert. denied, 271 Conn. 942, 861 A.2d 515 (2004). "To be timely, notice must be given within the time period provided in Practice Book § 17-35." *Bank of New York* v. *National Funding*, 97 Conn. App. 133, 140, 902 A.2d 1073, cert. denied, 280 Conn. 925, 908 A.2d 1087 (2006), and cert. denied sub nom. *Reyad* v. *Bank of New York*, 549 U.S. 1265, 127 S. Ct. 1493, 167 L. Ed. 2d 229 (2007). Section 17-35 (b) provides that "notice of defenses must be filed within ten days after notice from the clerk to the defendant that a default has been entered."

[13] Although the determination of whether equitable doctrines are applicable in a particular case is a question of law subject to plenary review; see *Walpole Woodworkers, Inc.* v. *Manning*, 307 Conn. 582, 588, 57 A.3d 730 (2012); the amount of damages awarded under such doctrines is a question for the trier of fact. *David M. Somers & Associates, P.C.* v. *Busch*, 283 Conn. 396, 407, 927 A.2d 832 (2007).

[14] The self-represented defendant advances a number of arguments for reversal of the court's judgment that have no basis in the court's memorandum of decision or in our case law.

He first contends that the court erred in requiring him to repay amounts earned prior to September 5, 2013, arguing that Connecticut law does not permit the forfeiture of past compensation upon finding a breach of duty of loyalty. The defendant maintains that future compensation only may be subject to forfeiture, citing *Dunsmore & Associates, Ltd.* v. *D'Alessio*,

Superior Court, judicial district of New Haven, Docket No. 409906 (January 6, 2000) (26 Conn. L. Rptr. 228), in support of his argument. That superior court case involved claims of breach of contract and breach of the implied covenant of good faith and fair dealing, and thus is both distinguishable and not binding on this court. In contrast, *Wall Systems, Inc.* v. *Pompa*, supra, 324 Conn. 733–34, provides generally that "[i]f the employee breaches the duty of loyalty at the heart of the employment relationship, he or she may be compelled to forego *the compensation earned* during the period of disloyalty." (Emphasis added.)

Second, the defendant argues that because the plaintiff prospered during the period of the defendant's employment, the plaintiff cannot show it was damaged by his acts and is not entitled to recover damages for lost profits. Although the court abused its discretion in fashioning its damage award, it did not use lost profits as the measure of damages, and, thus, the defendant's argument is inapposite.

Third, the defendant argues that "[t]he proper measure of damages for breach of covenant not to compete is the nonbreaching party's losses, not the breaching party's gains. . . . Where the judge reversed this standard in his memo on damages, he applied an incorrect standard, which rendered an incorrect award of damages" to the plaintiff. Because this action contains no claim of breach of a covenant not to compete, the defendant's argument and supporting case law is inapplicable.

Fourth, recognizing that no damages were awarded on the plaintiff's count alleging violation of CUTSA, the defendant nevertheless argues, in the event that the plaintiff "may choose to raise [the CUTSA claim] in this appeal," that no recovery under CUTSA is proper. Specifically, he argues, citing *Dunsmore & Associates, Ltd.* v. *D'Alessio*, supra, 26 Conn. L. Rptr. 228, that the plaintiff is not entitled to recover compensatory damages under § 35-53 because it has failed to prove that it sustained actual loss or that the defendant was unjustly enriched as a result of his misappropriation. He also argues that the plaintiff is not entitled to punitive damages under CUTSA. He further argues that the plaintiff cannot recover damages for tortious interference, on the basis that it has failed to prove a loss suffered by the plaintiff and caused by the defendant's tortious conduct. Because the court awarded no damages under either the CUTSA or tortious interference counts and the plaintiff did not file a cross appeal from the trial court's judgment, we need not address these arguments.

[15] With respect to the finder's fee, although Hertzmark testified that the defendant received $150,000 for the work he performed in 2013, he acknowledged that "*during the course of several years*, [the defendant] and I have looked at a number of companies, thirty-five, thirty different companies, and ultimately settled in 2013 on Captivate. So . . . what you're hearing about with Captivate was *the tail end of the relationship*." (Emphasis added.) The arrangement between Hertzmark and the defendant began in 2010 or 2011, and the defendant was uncompensated when the two began to look at potential companies together. It was agreed that if an acquisition closed, the defendant would be paid a finder's fee at that time. For the majority of the term of that relationship, the defendant was not a full-time employee of the plaintiff. Hertzmark testified that even had he known that the defendant was a full-time employee of the plaintiff in 2013, he still would have paid him the "cash compensation regardless of his employment because [the defendant] had made the introduction many years ago."

Moreover, although Hertzmark testified that the three year, $150,000 prospective consulting contract was part of the defendant's compensation for working on the Captivate transaction in 2013, he later clarified that the defendant "has been given $50,000 per year for his work on the transaction *and since the transaction has closed*." (Emphasis added.) He further testified that "I would say through the work we did together in 2013, we saw that he would be a valuable post-transaction consultant, and so we signed him up to a three year agreement, post closing." Thus, although he was provided the opportunity to sign the agreement as a consultant on the basis of his work in 2013, he performed the services specified in the agreement and earned the $50,000 per year subsequent to the termination of his employment with the plaintiff.