## LITTLE MOUNTAINS ENTERPRISES, INC. *v.* DAVID GROOM ET AL.
### (AC 34287)

Gruendel, Beach and Alvord, Js.

acknowledgment of a strained relationship between the plaintiff and Ansell is evidence of judicial bias.

Argued January 7— officially released April 9, 2013

*Alan R. Spirer*, for the appellant (plaintiff).

*Robert A. Fuller*, with whom was *George C. Guidera*, for the appellees (defendants).

*Opinion*

ALVORD, J. The plaintiff, Little Mountains Enterprises, Inc., appeals from the judgment of the trial court, following a bench trial, in this breach of contract action against the defendants, David Groom, Dwight Groom and Thomas Groom, as trustees of the McKinney charitable trust, and David E. Groom, as ancillary executor of the estate of J. Donald McKinney. Although judgment was rendered in its favor, the plaintiff claims that the court failed to apply the proper measure of damages. We agree and, accordingly, reverse in part the judgment of the trial court.

The following facts were found by the court or are not disputed. On August 13, 2004, the parties entered

into a written contract in which the defendants, as owners, agreed to sell undeveloped real property located in Weston (the premises) to the plaintiff for $1.25 million. A rider attached to the contract provided that the defendants "represent and warrant that the [p]remises consists of two building lots each approved for a five bedroom single family dwelling." In making this representation, the defendants relied on the opinion of Robert P. Turner, the town's zoning enforcement officer, that the division of the premises into two lots did not require subdivision approval. In reliance on the representation that the premises consisted of two building lots, the plaintiff purchased the premises and recorded the deeds conveying title on September 9, 2004.

By letter dated February 9, 2005, which was five months after the closing, Turner notified the plaintiff that he had received additional information regarding a previous division of the premises that affected the "subdivision status" of the two lots. Turner advised that he would be unable to issue any zoning permits for the premises until the matter was resolved.[1] The plaintiff, without notifying the defendants about the zoning issues raised by Turner, applied to the town's planning and zoning commission (commission) for approval of a two lot subdivision. On June 20, 2006, the commission's approval of the plaintiff's application became final. At that point in time, the defendants still had no knowledge that the premises had not been divided properly and that the plaintiff had made expenditures, which it claimed totaled $262,987.23, in obtaining subdivision approval.

On September 14, 2007, the plaintiff filed the present action against the defendants. In its operative four count complaint, the plaintiff alleged breach of contract, fraudulent misrepresentation, negligent misrepresentation and innocent misrepresentation. The

---

[1] None of the defendants received a copy of Turner's letter.

defendants filed an answer and five special defenses. During the two day trial in June, 2011, the plaintiff withdrew its claim of fraudulent misrepresentation. Following the submission of posttrial briefs, the court issued its memorandum of decision on December 6, 2011. In that decision, the court concluded that the defendants had breached the sales contract by failing to convey two building lots, each approved for a five bedroom single-family dwelling, as promised to the plaintiff. Although the defendants' representation regarding the subdivision status of the premises was false, the court determined that the misrepresentation was made innocently, not negligently, in reasonable reliance on Turner's opinion prior to the conveyance of title. The court further concluded that the defendants failed to prove their special defenses by a fair preponderance of the evidence. Neither the plaintiff nor the defendants have challenged those determinations.

The sole issue on appeal is whether the court's calculation of damages for that breach of contract was appropriate. A careful review of the opinion reveals that the court took several factors into account in determining the amount to be awarded the plaintiff: (1) the plaintiff failed to notify the defendants of Turner's letter dated February 9, 2005; (2) the defendants testified that they would have assisted the plaintiff in curing any defect related to zoning if they had been aware of the problem; (3) the plaintiff neglected to provide the defendants with "a reasonable chance to cure the defect in a cost effective manner"; (4) the plaintiff unilaterally "underwent costly measures to fix the problem itself"; (5) the plaintiff did not have the right "to accrue large amounts of damages because of the fact that the defendants [breached] the parties' contract"; (6) the defendants "may have been able to fix the problems in a more cost effective manner" if the plaintiff had informed them of the zoning issues; (7) the plaintiff failed to provide the

court with sufficient evidence regarding the difference in the value of the premises actually sold by the defendants and the value of the premises as represented; (8) the plaintiff sought $262,987.23 in damages, which was the amount it claimed it expended to cure the problems associated with the subdivision issues, but it was "not appropriate to award a large amount of damages based on cost of repair when the diminished value of the property [was] a low amount . . . effectively zero because the plaintiff [had] not carried its burden of proof on that issue"; and (9) a large damages award, as claimed, was particularly inappropriate because the defendants' false statement was an innocent misrepresentation. In light of those stated considerations, the court awarded damages from the period September 9, 2004, when title passed to the plaintiff, to February 9, 2005, when the plaintiff became aware of the fact that it did not obtain two approved building lots. The court's total damages award of $77,741.60 included surveying and engineering fees, real estate taxes[2] and interest paid on the plaintiff's bank loans.[3] This appeal followed.

The plaintiff claims that the court improperly declined to award the $262,987.23 in costs that it reasonably incurred in curing the problem that arose from the defendants' breach of the contract. The plaintiff argues that the costs to cure the problem furnished a reasonable approximation of the diminished value of the premises as represented and as conveyed. The plaintiff maintains that the award of damages should have been calculated from September 9, 2004, the date title was

[2] The plaintiff sought to recover all of the real estate taxes it had paid on the property from the time it took title in September, 2004, until the time of subdivision approval in June, 2006.

[3] Following the issuance of the court's memorandum of decision on December 6, 2011, the plaintiff moved for an award of attorney's fees pursuant to paragraph 37 of the parties' sales contract. The court awarded the plaintiff $22,522.50. The defendants have not challenged that ruling in this appeal.

transferred to the plaintiff, through June 3, 2006, when the breach was cured by the commission's approval of a two lot subdivision. Although we do not agree precisely with the claims as presented by the plaintiff, we none-theless remand this case for a redetermination of damages.

We begin our analysis with a statement of the stan-dard of review. "The trial court has broad discretion in determining damages, and we will not overturn its decision unless it is clearly erroneous. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Keefe* v. *Norwalk Cove Marina, Inc.*, 57 Conn. App. 601, 609, 749 A.2d 1219, cert. denied, 254 Conn. 903, 755 A.2d 881 (2000).

"[C]ontract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of the bargain by awarding a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed. . . . Such damages, more-over, are to be determined at the time of the breach. . . . The nonbreaching party has a duty to minimize any damages as a result of the breach." (Citations omitted; internal quotation marks omitted.) Id., 610. "The stan-dard measure of damages for breach of a contract for sale is the difference between the contract price and the market value of the property at the time of the breach . . . ." (Citations omitted.) *Williams* v. *Breyer*,

21 Conn. App. 380, 384, 573 A.2d 765, cert. denied, 215 Conn. 812, 576 A.2d 542 (1990). "The plaintiff has the burden of proving the extent of the damages suffered. . . . Although the plaintiff need not provide such proof with [m]athematical exactitude . . . the plaintiff must nevertheless provide sufficient evidence for the trier to make a fair and reasonable estimate." (Internal quotation marks omitted.) *Naples* v. *Keystone Building & Development Corp.*, 295 Conn. 214, 224, 990 A.2d 326 (2010).

In *Johnson* v. *Healy*, 176 Conn. 97, 405 A.2d 54 (1978), our Supreme Court addressed the scope of a defendant seller's liability for his innocent misrepresentation with respect to the condition of the house he sold to the plaintiff purchaser. After the conveyance, the house settled because of improper fill placed on the lot prior to construction, resulting in major foundation displacements and other damages. Id., 98–99. The trial court had determined that the defendant had no knowledge of the problem prior to the sale, either actual or constructive, but, nevertheless, found him liable; id., 99; and awarded $5000 in damages to the plaintiff. Id., 104. The Supreme Court concluded that, on the facts of the case, liability for innocent misrepresentation was entirely appropriate.[4] Id., 102.

Both parties in *Johnson* challenged the amount of the damages awarded by the trial court. The plaintiff claimed that the award was inadequate because it did not measure damages by the cost of repairs. The defendant argued that the award was excessive because it did not measure the difference between the values of

---

[4] "This court has long recognized liability for innocent misrepresentation. The elements of this cause of action are (1) a representation of material fact, (2) made for the purpose of inducing the purchase, (3) the representation is untrue, and (4) there is justifiable reliance by the plaintiff on the representation by the defendant and (5) damages." (Internal quotation marks omitted.) *Matyas* v. *Minck*, 37 Conn. App. 321, 333, 655 A.2d 1155 (1995).

the property as warranted and as sold. Id., 104. Our Supreme Court first recited the general rule for contract damages as being such compensation as would place the prevailing party in the same position he would have enjoyed had the property been as warranted. The court then referenced its prior decision in *Levesque* v. *D & M Builders, Inc.*, 170 Conn. 177, 365 A.2d 1216 (1976), in which it adopted a rule that limited the damages award to the diminished value of the building whenever the cost of repairs is dramatically larger than the difference in value. *Johnson* v. *Healy*, supra, 176 Conn. 105. Referring to the rule, the court stated: "Although the costs of repair may more precisely place the injured party in the same physical position as full performance, policy dictates limitation to diminution of value to avoid unreasonable economic waste. . . . Contract restraints are particularly appropriate when damages are awarded, as in this case, for misrepresentations which, though actionable, are totally innocent." Id., 105–106. The court concluded that "[t]he proper test for damages was the difference in value between the property had it been as represented and the property as it actually was."[5] Id., 106.

In the present case, the plaintiff presented no evidence as to the difference in the values of the premises as warranted and as sold. Without that evidence, the court had only the costs of securing the subdivision approval as the plaintiff's claimed measure of damages. The court, however, without actually stating that such costs would constitute economic waste, did comment that the plaintiff did not provide the defendants with an opportunity to cure the defect in "a cost effective manner," that the plaintiff "underwent costly measures" to obtain subdivision approval and that it had accrued "large amounts of damages" to remedy the breach. Not

---

[5] The court noted that reasonable costs of repair may sometimes furnish a reasonable approximation of diminished value. *Johnson* v. *Healy*, supra, 176 Conn. 106.

having evidence of the diminution in value and unwilling to award the $262,987.23 in costs claimed by the plaintiff,[6] the court essentially awarded the damages that would have been recoverable had the plaintiff elected to rescind the contract when it learned of the zoning problems on February 9, 2005. Such an award, under the circumstances of this case, is clearly erroneous.

It is true that the plaintiff could have sought rescission of the contract as a remedy in this action. Rescission of a contract is an appropriate remedy if there has been a material misrepresentation of fact upon which a party relied and which caused it to enter the contract. See *State* v. *Hartford Accident & Indemnity Co.*, 136 Conn. 157, 167, 70 A.2d 109 (1949). The material misrepresentation, when made in connection with the sale of land, may be an innocent misrepresentation. *Kavarco* v. *T.J.E., Inc.*, 2 Conn. App. 294, 298, 478 A.2d 257 (1984), overruled in part on other grounds by *Kaczynski* v. *Kaczynski*, 294 Conn. 121, 130–31, 981 A.2d 1068 (2009); see 17 S. Williston, Contracts (4th Ed. Lord 2000) § 50.29, p. 364. The party defrauded has the option of electing either to rescind the contract or to claim damages for breach of the contract. See *Pacelli Bros. Transportation, Inc.* v. *Pacelli*, 189 Conn. 401, 409–10, 456 A.2d 325 (1983). "The remedy of rescission and restitution is an alternative to damages in an action for breach of contract. . . . Rescission, simply stated, is the unmaking of a contract. It is a renouncement of the contract and any property obtained pursuant to the contract, and places the parties, as nearly as possible, in the same situation as existed just prior to the execution of the contract. . . . Restitution is [a]n equitable remedy under which a person is restored to his or her original position prior to loss or injury, or placed in the

---

[6] "The burden is on the claimant to present evidence which affords a reasonable basis for measuring loss." *Gerrety Co.* v. *Palmieri*, 11 Conn. App. 226, 230, 526 A.2d 555 (1987).

position he or she would have been, had the breach not occurred." (Internal quotation marks omitted.) *DeMattia* v. *Mauro*, 86 Conn. App. 1, 11, 860 A.2d 262 (2004).

Here, the trial court awarded damages from the date the property was conveyed to the plaintiff until the date it learned that the property had not been properly divided into two building lots. In essence, the court treated the situation as if the plaintiff had rescinded the contract and awarded it restitution damages. The defendants argue that the court acted properly because the plaintiff, by failing to notify the defendants of the zoning issues and to afford them the opportunity to cure the defect, failed to mitigate its damages. They claim that the plaintiff should have rescinded the contract in order to mitigate its damages. This argument fails, however, because the plaintiff, as the non-breaching party, had the choice of rescinding the contract or claiming damages for breach of contract. The plaintiff chose to bring an action for breach of contract. It did not seek the remedy of rescission in its complaint, and, at trial, it expressly acknowledged that it never sought to rescind the contract. The defendants cite no authority, and we are aware of none, that would permit a court to force a nonbreaching party to rescind a contract and to accept restitution damages as its remedy. Accordingly, the trial court failed to apply the proper measure of damages for the defendants' breach of the sales contract.

The judgment is reversed as to the award of damages only and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.