******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ERMAND FEZOLLARI *v.* ADISA JAUZOVIC ET AL.
## (AC 47221)

Bright, C. J., and Suarez and Seeley, Js.*

### *Syllabus*

The defendant J, the owner of the defendant trucking companies, appealed from the default judgment rendered by the trial court, following a hearing in damages, for the plaintiff on his breach of contract action. J claimed, inter alia, that, at the hearing in damages, the trial court improperly denied her the opportunity to present evidence to mitigate damages pursuant to the relevant rules of practice (§§ 17-34 (a) and 17-40). *Held*:

The trial court improperly denied J the opportunity to present evidence at the hearing in damages, as she was not permitted to engage in a full cross-examination of the plaintiff, to submit evidence repudiating the damages sought by the plaintiff, or to participate in a meaningful way other than to offer unsworn representations regarding the damages.

This court concluded that, because the lack of an adequate record to review the harm caused by the trial court's failure to provide the defendant an opportunity to present evidence at the hearing in damages was not due to any fault of J, who was self-represented, a new hearing in damages was warranted based on the unique circumstances of this case.

The trial court used an incorrect measure of damages for the value of the truck that was the subject of the contract that was breached, as it improperly relied on the amount of the plaintiff's investment in the truck two years prior to the breach of contract, rather than the truck's fair market value at the time of the breach, and, thus, had misinterpreted expectation damages.

This court concluded that, because the rights of all parties were interwoven and the erroneous legal decision of the trial court formed the basis for the award of damages against all defendants, the damages award cannot stand, even as to the nonappearing defendant companies.

Argued January 13—officially released April 15, 2025

### *Procedural History*

Action to recover damages for breach of contract, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the named defendant was defaulted for failure to plead and the

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

defendant A & A Transportation, LLC, et al., were defaulted for failure to appear; thereafter, after a hearing in damages, the court, *Hon. Joseph H. Pellegrino*, judge trial referee, rendered judgment for the plaintiff, from which the named defendant appealed to this court. *Reversed in part*; *further proceedings*.

*Christopher G. Brown*, for the appellant (named defendant).

*David V. DeRosa*, for the appellee (plaintiff).

*Opinion*

SEELEY, J. The defendant Adisa Jauzovic,[1] who had been defaulted for failure to plead, appeals from the judgment of the trial court rendered on the default in favor of the plaintiff, Ermand Fezollari, following a hearing in damages. On appeal, the defendant claims that, at the hearing in damages, the court (1) improperly denied her the opportunity to present evidence to mitigate damages as provided for in Practice Book §§ 17-34 (a) and 17-40 and (2) used an incorrect measure of damages in calculating the damages award. We agree with the defendant as to both claims and, accordingly, reverse in part the judgment of the court as to the award of damages and remand the case for a new hearing in damages.

The following undisputed facts and procedural history are relevant to this appeal. The defendant is engaged in the business of trucking and product transportation. In January, 2020, the plaintiff, a truck driver, began driving trucks for the defendant's two limited liability companies (defendant companies), A & A

---

[1] The other defendants in this action are limited liability companies operated by Jauzovic: A & A Transportation, LLC, and Luna Transportation, LLC. Although both of the defendant companies were defaulted for failing to appear and judgment was rendered against them as well, they have not appealed from the judgment or otherwise participated in this appeal. In this opinion, therefore, we refer to Jauzovic as the defendant.

Transportation, LLC, and Luna Transportation, LLC. On July 9, 2021, the plaintiff purchased a 2006 Volvo truck for $6000. The plaintiff made that purchase for the purpose of being able to work as an owner-operator[2] for the defendant companies, which would enable him to earn more money than he did as a driver. The defendant, in turn, informed the plaintiff that, for him to be able to work as an owner-operator for the defendant companies, the defendant needed to register and hold the title to the truck. Around July, 2021, the plaintiff entered into an agreement with the defendant and the defendant companies whereby the truck would be registered by the defendant—who would hold title to the truck[3]—and the plaintiff would drive the truck and work as an owner-operator for the defendant companies. The agreement also provided that, if the plaintiff ceased his employment with the defendant companies, the defendant would return the title to the truck to him. The plaintiff worked as an owner-operator for approximately one year, after which he went back to operating one of the defendant companies' trucks as an employee truck driver. In both roles, the plaintiff "pick[ed] up and dropp[ed] off various loads of refrigerated products to and from various" customers of the defendant companies. On January 28, 2023, the plaintiff's employment with the defendant companies ceased. At some point thereafter,[4] the plaintiff demanded that the title to the

---

[2] According to the plaintiff's testimony at the hearing in damages, an "owner-operator," in this context, is a truck driver who owns the truck that is used to engage in the transportation of commercial products for a company. See, e.g., *Swanson Hay Co.* v. *Employment Security Dept.*, 1 Wn. App. 2d 174, 181, 404 P.3d 517 (2017) ("'owner-operators' " are "individuals who own trucking equipment, lease it to a carrier, and then use that equipment under contract to haul freight for that carrier"), review denied, 191 Wn. 2d 1004, 428 P.3d 124 (2018), cert. denied sub nom. *Hatfield Enterprizes, Inc.* v. *Employment Security Dept.*, 586 U.S. 1036, 139 S. Ct. 605, 202 L. Ed. 2d 430 (2018).

[3] The truck was in fact registered in the name of A & A Transportation, LLC.

[4] The complaint does not set forth a specific date on which the plaintiff demanded the return of the title to his truck.

truck be returned to him; the defendant, however, did not return the title to the plaintiff.[5]

On March 2, 2023, the plaintiff commenced the present action. The single count complaint sets forth a breach of contract claim against the defendant and the defendant companies and requests, inter alia, money damages and the return of the title to the truck. Specifically, the plaintiff alleges that the parties' agreement was breached by the defendant's failure to return the title to him after his employment with the defendant companies ceased, which prevented him from earning a living and supporting his family. The plaintiff filed a motion for default for failure to appear as to the defendant companies, which was granted on April 3, 2023. The plaintiff subsequently filed a motion for default for failure to plead as to the defendant, which was granted on May 25, 2023.

The court held a hearing in damages on December 1, 2023, at which the defendant appeared in a self-represented capacity. No counsel appeared on behalf of the defendant companies, which, therefore, did not participate in the hearing. At the hearing in damages, the plaintiff testified that, although he had paid $6000 to purchase the truck, he paid an additional $26,870.21 for "upgrades" to the truck at various auto shops because "[t]he truck needed some work." Specifically, a rebuilt motor was installed in the truck, the transmission was serviced, and new tires were needed. Thus, he asked the court to value the truck at $32,870.21. During the hearing, the court engaged in the following colloquy with the defendant about her role at the hearing:

"The Court: The reason . . . that we're not asking you whether or not you object or don't object, is that

---

[5] At the time of the hearing in damages, the plaintiff was in physical possession of the truck, as he had taken it from the defendant's property, without permission, on January 29, 2023.

there has been a default judgment against you, so that *the only participation today for you is to comment on the damages*, okay?

"[The Defendant]: Okay.

\* \* \*

"The Court: Relative to damages . . . you can ask [the plaintiff] any question you'd like.

"[The Defendant]: Okay.[6]

\* \* \*

"The Court: But [the plaintiff] can't use [the truck] because he doesn't have the title to it?

---

[6] The defendant's cross-examination of the plaintiff proceeded as follows:

"[The Defendant]: My question is, last four months, did you drive your truck, or [did] you drive the company truck of A & A Transportation [LLC]?

"[The Plaintiff]: Company truck.

"[The Defendant]: Okay, what was the reason why you left your truck—

"[The Plaintiff]: Because—

"[The Defendant]: —and stole my truck?

"[The Plaintiff]: —I wasn't making money with you.

"[The Defendant]: Okay, you were not making money with your truck, but you were making money with my company truck?

"[The Plaintiff]: Because you were stealing from me, everything was in open—

"[The Defendant]: Your Honor, his truck was broke[n] down on my parking lot, 2006 Volvo was broke[n] down—

"[The Plaintiff's Counsel]: Your Honor, this is going beyond the scope of—

"[The Defendant]: —[t]hat's why he has to drive my truck for the past four months and he came on January 29 in the middle of the night and took the truck off my parking lot with my registration, my name on the registration, my details on the truck, everything else took and I had to call the police and report [a] missing truck. Since January 29, 2023, he has the possession of the truck. The title I do have it, but I want property tax to be paid, I want all highway tax to be paid because they are under my name, I don't need his truck.

"[The Plaintiff]: Your Honor, may I respond?

"[The Plaintiff's Counsel]: Your Honor, it's unfortunate that this is the first opportunity we are getting to hear from the defendant.

"[The Defendant]: Yeah, because—

"The Court: I'm inclined to get—who has the truck right now?

"[The Defendant]: He does, since January 29, Your Honor.

"[The Plaintiff's Counsel]: The truck is parked on [the plaintiff's] property, that is correct, Your Honor."

"[The Defendant]: That's correct. . . . Your Honor, do you want—

"The Court: No. No. *You can't introduce any exhibits.* I'm sorry.

"[The Defendant]: Oh. I'm sorry." (Emphasis added; footnote added.)

After the defendant's cross-examination was interrupted by the back-and-forth between the defendant, the court and the plaintiff's counsel, the court excused the witness and immediately moved on to closing argument. It did so without inquiring as to whether the defendant had finished her cross-examination and without the defendant saying that she was done asking questions or being given an opportunity to present any evidence concerning damages.[7] The court permitted the plaintiff's counsel to provide closing argument but never asked the defendant if she wanted to present closing argument.

The court subsequently rendered judgment in favor of the plaintiff, awarding him $32,870.21 for the value of the truck "provided that the plaintiff allows the [defendant and/or the defendant companies] to take the truck in its present condition and that the plaintiff does no damage to the truck as it exists at the time of this order."[8] This appeal followed.

I

The defendant first claims on appeal that the court improperly denied her the opportunity to testify, to

---

[7] The defendant correctly notes in her appellate reply brief that any assertions made by her at the hearing in damages did not constitute sworn testimony or evidence but, rather, were unsworn representations. See *Federal National Mortgage Assn.* v. *Buhl*, 186 Conn. App. 743, 751, 201 A.3d 485 (2018), cert. denied, 331 Conn. 906, 202 A.3d 1022 (2019).

[8] In the back-and-forth that occurred during the defendant's truncated cross-examination of the plaintiff, the court stated that "[the plaintiff] is either going to get the title to the truck or he is going to get $32,000." When the court asked the plaintiff if the defendant could have the truck, the plaintiff responded: "Yes, she can have the truck if she pays me damages, correct."

present exhibits, and to call witnesses at the hearing in damages. Specifically, the defendant argues that she possessed a right to do so pursuant to Practice Book §§ 17-34 (a)[9] and 17-40,[10] and that the court improperly denied her this right when, during the hearing, it told the defendant that her participation was limited to commenting on the damages and that she could not introduce any exhibits. The plaintiff counters that, because the truck was not registered in "[the defendant's] name but her company, she was not entitled to introduce evidence of recoupment for her company," as the plaintiff had appeared in a self-represented capacity at the hearing and, thus, she could not act in a representative capacity on behalf of the nonappearing defendant companies, which had been defaulted for failure to appear and never retained the services of an attorney. As a result, the plaintiff asserts that the defendant, who acknowledged that the truck was registered in the name of A & A Transportation, LLC, could not present evidence demonstrating that A & A Transportation, LLC, was entitled to offset any damages owed the plaintiff on account of taxes and fees that A & A Transportation, LLC, had incurred for the truck.[11] We agree with the defendant.

[9] Practice Book § 17-34 (a) provides: "In any hearing in damages upon default, the defendant shall not be permitted to offer evidence to contradict any allegations in the plaintiff's complaint, except such as relate to the amount of damages, unless notice has been given to the plaintiff of the intention to contradict such allegations and of the subject matter which the defendant intends to contradict, nor shall the defendant be permitted to deny the right of the plaintiff to maintain such action, nor shall the defendant be permitted to prove any matter of defense, unless written notice has been given to the plaintiff of the intention to deny such right or to prove such matter of defense."

[10] Practice Book § 17-40 provides: "The defendant may, without notice, offer evidence to reduce the amount of damages claimed."

[11] The plaintiff further asserts that the court "did permit [the defendant] to cross-examine [the plaintiff] and to testify about damages," and that "there was no real limitation placed on [the defendant's ability] to present evidence to reduce the damages to her personally." We do not agree. Although, as we have stated in this opinion, the record contains statements by the defendant concerning expenses allegedly incurred by the defendant

We begin by setting forth the standard of review and legal principles that govern our review. "It has long been the rule that control of the order of the courtroom is necessarily within the discretion of the trial court . . . . The trial court is vested with a large discretion over matters occurring in the conduct of the trial. While this is a judicial discretion and therefore subject to some degree of review and control, its exercise will not be interfered with unless it has been clearly abused to the manifest injury of a litigant. . . . This inherent power to control proceedings exists independent of any set forth by rule or statute. . . . The trial court has a responsibility to avoid unnecessary interruptions, to maintain the orderly procedure of the court docket, and to prevent any interference with the fair administration of justice. . . . In addition, matters involving judicial economy, docket management [and control of] courtroom proceedings . . . are particularly within the province of a trial court. . . . In determining whether a trial court abused its discretion, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness." (Citations omitted; internal quotation marks omitted.) *Micalizzi* v. *Stewart*, 181 Conn. App. 671, 699–701, 188 A.3d 159 (2018).

Furthermore, "[i]n order to constitute reversible error . . . the ruling must be both erroneous and harmful. . . . The burden of proving harmful error rests on the party asserting it . . . and the ultimate question is whether the erroneous action would likely affect the result." (Internal quotation marks omitted.) *Tala E. H.* v. *Syed I.*, 183 Conn. App. 224, 248, 192 A.3d 494 (2018),

companies, the court unequivocally foreclosed the defendant from submitting any exhibits into evidence and did not provide her with an opportunity to fully cross-examine the plaintiff or to present any witnesses. Consequently, we cannot conclude that the only evidence that the defendant would have offered included evidence related to the nonappearing defendant companies. The plaintiff's assertion, therefore, is unavailing.

cert. denied, 330 Conn. 959, 199 A.3d 19 (2019). Of course, in the context of a hearing in damages, " 'the result' " that a party must show was affected by the improper ruling; id.; is not the fact finder's finding of liability but, rather, the award of damages itself.

In the present case, the defendant was defaulted for failing to plead and did not file a notice of intent to present defenses. "[C]ase law makes clear . . . that once the defendants had been defaulted and had failed to file a notice of intent to present defenses, they, by operation of law, were deemed to have admitted to all the essential elements in the claim and would not be allowed to contest liability at the hearing in damages. . . . A default admits the material facts that constitute a cause of action . . . and entry of default, when appropriately made, conclusively determines the liability of a defendant. . . . If the allegations of the plaintiff's complaint are sufficient on their face to make out a valid claim for the relief requested, the plaintiff, on the entry of a default against the defendant, need not offer evidence to support those allegations. . . . Following the entry of a default, all that remains is for the plaintiff to prove the amount of damages to which it is entitled. . . . At a minimum, the plaintiff in such instances is entitled to nominal damages." (Citations omitted; internal quotation marks omitted.) *Hospital Media Network, LLC* v. *Henderson*, 187 Conn. App. 40, 48–49, 201 A.3d 1059 (2019). The burden is on the plaintiff to "prove how much of the judgment prayed for in the complaint he is entitled to receive." (Emphasis omitted; internal quotation marks omitted.) Id., 50.

"A . . . hearing in damages . . . has all the hallmarks of a trial, including taking evidence, examining witnesses, finding facts, and applying the law to those facts." *Lyme Land Conservation Trust, Inc.* v. *Platner*, 334 Conn. 279, 292, 221 A.3d 788 (2019). "[T]he underlying purpose of a hearing in damages is to assist the

trial court in determining the amount of damages to be awarded. . . . When the liability of a defendant has been established, the plaintiff's burden at a hearing in damages is limited to proving that the amount of damages claimed is derived from the injuries suffered and is properly supported by the evidence. . . . Accordingly, while a defendant may not challenge the issue of its liability at a hearing in damages, it nevertheless remains free to contest the issues of both the amount of the plaintiff's breach of contract damages and whether those damages derive from the defendant's conduct." (Citations omitted; internal quotation marks omitted.) *Bruno* v. *Whipple*, 186 Conn. App. 299, 314–15, 199 A.3d 604 (2018), cert. denied, 331 Conn. 911, 203 A.3d 1245 (2019).

In the present case, the plaintiff sought damages from the individual defendant and from the defendant companies but did not differentiate between those defendants in seeking damages in his complaint. Although the defendant had been defaulted, she was entitled to "contest the issues of both the amount of the plaintiff's breach of contract damages and whether those damages derive[d] from the defendant's conduct." Id., 315. Therefore, because the defendant was entitled to present evidence contesting the amount of damages claimed by the plaintiff, the court abused its discretion by not permitting the defendant to testify, to call witnesses, to engage in full cross-examination, or to introduce exhibits at the hearing in damages for that purpose.

Furthermore, the fact that the truck was registered in the name of A & A Transportation, LLC, did not preclude the defendant from presenting evidence demonstrating either that the amount of the damages claimed by the plaintiff was incorrect or that it did not derive from the defendant's conduct. Indeed, in her appellate brief, the defendant asserts that, if allowed, she would have testified "that the truck's attainable

speed without a load was severely restricted and that [the truck] could not reach anything near highway speed with [a load]," and that the truck had been "broken down for four months as of the date that [the plaintiff] left her employment." Such testimony, if credited by the court, could have impacted the assessment of the value of the truck and, hence, the damages award against the defendant, and was independent of any recoupment sought for expenses incurred by the defendant companies. Significantly, this court previously has recognized that Practice Book § 17-40 permits a party that has been found liable "to appear [at the hearing in damages] and offer evidence to reduce the amount of damages claimed without giving any notice." (Internal quotation marks omitted.) *Wren* v. *MacPherson Interiors, Inc.*, 69 Conn. App. 349, 352 n.4, 794 A.2d 1043 (2002); see also *LaRosa* v. *Kline*, 36 Conn. App. 501, 504, 651 A.2d 1324 (1995). In the present case, the court did not permit the defendant to engage in a full cross-examination of the plaintiff at the hearing in damages, to submit evidence repudiating the damages sought by the plaintiff from the defendant, or to participate in a meaningful way other than to offer unsworn representations regarding the damages. As a result, the hearing in damages clearly lacked "the hallmarks of a trial . . . ." *Lyme Land Conservation Trust, Inc.* v. *Platner*, supra, 334 Conn. 292. Accordingly, we conclude that the court improperly denied the defendant the opportunity to present evidence at the hearing in damages.

We next must determine whether the defendant has established that this error was harmful in that it likely affected the result of the hearing in damages. See *Tala E. H.* v. *Syed I.*, supra, 183 Conn. App. 248. The defendant argues that the court's error harmed her because "she could have testified about the condition of [the] truck" and presented "recoupment"[12] evidence "of the

---

[12] "Recoupment means keeping back something which is due, because there is an equitable reason to withhold it. . . . [I]t is purely defensive,

taxes and other expenses incident to her company having title to the truck that she wanted [the plaintiff] to pay.” Conversely, the plaintiff argues that “[a]ny error in this case would be harmless” because “[a]ny evidence produced at a new trial” as to “the companies [the defendant] owns, rather than [the] expense[s] she personally incurred, would be properly ruled excluded or inadmissible at a hearing in damages for recoupment just as [the court] did in this case.” We are not persuaded by the plaintiff’s assertions.

Aside from the few unsworn representations made by the defendant during her brief colloquy with the court and her incomplete cross-examination of the plaintiff, we do not know what evidence she may have produced to contest the damages claimed by the plaintiff or whether any such evidence would have been limited to expenses incurred by the defendant companies. For example, the defendant alluded to the fact that the truck was in a state of disrepair, evidence of which could have impacted the court’s valuation of the truck and, hence, its determination of damages. Ordinarily, in circumstances such as the present case, a record devoid of an offer of proof concerning the evidence that the defendant would have presented if she was permitted to do so would preclude us from determining that the court’s error was harmful. See *Dinan* v. *Marchand*, 279 Conn. 558, 567, 583, 903 A.2d 201 (2006) (recognizing that, “[w]hen judging the likely effect of [an improper] trial court ruling, the reviewing court is constrained to make its determination on the basis of the printed record before it” and concluding that, “[b]ecause at trial the plaintiff made no offer of proof regarding the specific substance of the excluded testimony . . . it is not possible to evaluate the harmfulness of the exclusion” (internal quotation marks

used to diminish or defeat the plaintiff’s cause . . . .” (Citation omitted; internal quotation marks omitted.) *LoRicco* v. *Pantani*, 67 Conn. App. 681, 686, 789 A.2d 514 (2002).

omitted)). In the present case, however, the defendant's inability to present an offer of proof regarding the evidence she wanted to submit to contest damages was through no fault of her own. The court expressly told the self-represented defendant that her participation at the hearing in damages was limited to offering commentary on the amount of damages and cross-examining the plaintiff, and that she could not present exhibits. In light of those unequivocal instructions from the court, and the defendant's self-representation at the hearing in damages, we will not fault her for failing to object or to make a proffer, as that would violate the "established policy of the Connecticut courts to be solicitous of [self-represented] litigants and . . . to construe the rules of practice liberally in [their] favor . . . . The courts adhere to this rule to ensure that [self-represented] litigants receive a full and fair opportunity to be heard, regardless of their lack of legal education and experience . . . ." (Internal quotation marks omitted.) *Idlibi* v. *Hartford Courant Co.*, 350 Conn. 557, 569–70, 325 A.3d 1048 (2024); see also *Marcus* v. *Cassara*, 223 Conn. App. 69, 83 n.10, 308 A.3d 39 (2023) (determining that self-represented litigant did not waive claim on appeal by failing to object at trial). Under these circumstances, we believe the appropriate remedy is a new hearing in damages to allow the defendant to have a full and fair opportunity to be heard and to present evidence contesting the damages sought by the plaintiff.[13]

---

[13] In similar circumstances, our appellate courts have recognized that a reversal and remand is appropriate when, for example, the record is inadequate to review a claim through no fault of the party seeking review. See *Brennan* v. *Brennan Associates*, 316 Conn. 677, 705, 113 A.3d 957 (2015) ("We conclude that the record is inadequate to review the defendants' claim through no fault of the defendants. . . . [T]he defendants made sufficient attempts to obtain an adequate record for review . . . . Accordingly, under the unique circumstances of this case, we remand the case for further proceedings."); *Lapointe* v. *Commissioner of Correction*, 316 Conn. 225, 258 n.33, 112 A.3d 1 (2015) (noting that, where "the record was inadequate for review of [a particular] issue through no fault of the respondent . . . the Appellate Court . . . should have remanded the case to the habeas

In summary, because the lack of an adequate record to review harm in the present case is not due to any fault of the defendant, who was self-represented at the initial hearing in damages, a new hearing in damages is warranted based on the unique circumstances of this case. See *Idlibi* v. *Hartford Courant Co.*, supra, 350 Conn. 570; *Brennan* v. *Brennan Associates*, 316 Conn. 677, 705, 113 A.3d 957 (2015); *Zaniewski* v. *Zaniewski*, 190 Conn. App. 386, 387–88, 210 A.3d 620 (2019).

II

Although we have determined that a new hearing in damages is necessary, we address the defendant's claim that the court used an improper measure of damages in calculating the damages to be awarded to the plaintiff, as that issue is likely to arise on remand. See *Nyenhuis* v. *Metropolitan District Commission*, 300 Conn. 708, 725–26, 22 A.3d 1181 (2011); *TES Franchising, LLC* v. *Feldman*, 286 Conn. 132, 150, 943 A.2d 406 (2008). The defendant claims that the court used an incorrect measure of damages when it based its award of damages on the amount of the plaintiff's investment in the truck, rather than the truck's fair market value at the time of the breach. In connection with this claim, the defendant first asserts that the parties' agreement constitutes a bailment, which "involves a delivery of the thing bailed into the possession of the bailee, under a contract to

court for a resolution of the issue"); *Zaniewski* v. *Zaniewski*, 190 Conn. App. 386, 387–88, 210 A.3d 620 (2019) ("In many cases, an inadequate record would foreclose appellate review of an appellant's claim. Nevertheless, the inadequacy of the record in the present case arises not from any fault attributable to the defendant, but from the trial court's [conduct]. Although we are cognizant that the trial court is entitled to great deference . . . we nevertheless conclude under the unique circumstances presented here that equity requires a new trial."); see also *Capp Industries, Inc.* v. *Schoenberg*, 104 Conn. App. 101, 118, 932 A.2d 453 ("[u]nder these circumstances, in which the [parties], through no fault of their own, could not have obtained an articulation, it would be unjust to decline summarily to review their claim"), cert. denied, 284 Conn. 941, 937 A.2d 696 (2007), and cert. denied, 284 Conn. 941, 937 A.2d 697 (2007).

return it to the owner according to the terms of the agreement." (Internal quotation marks omitted.) *B. A. Ballou & Co.* v. *Citytrust*, 218 Conn. 749, 753, 591 A.2d 126 (1991). According to the defendant, "[t]he contract at issue is a bailment because it called for [the plaintiff] to deliver title to the truck to [the defendant], for [the defendant] to allow [the plaintiff] to drive the truck as an owner-operator for her company, and for [the defendant] to return the title to [the plaintiff] when he left [the defendant's] employment." Next, the defendant contends that "the correct measure of damages [for breach of a bailment contract] is the market value of the truck on the date that [the defendant] refused [the plaintiff's] demand for return of the title." In support of this assertion, she relies on *Griffin* v. *Nationwide Moving & Storage Co.*, 187 Conn. 405, 419, 446 A.2d 799 (1982), in which our Supreme Court held that "[t]he measure of damages for conversion of the subject-matter of a bailment . . . is the value of the property at the time of its conversion . . . with interest from that time, such value being fixed by the terms of the contract, if any, or, in the absence of contract, the market value." (Internal quotation marks omitted.) The defendant further points out that there was no evidence to support the "court's implicit conclusion that investment and value are the same thing," as gleaned from the court's statement at the hearing in damages that it believed that the value of the truck was the amount of the plaintiff's investment, and that there was no evidence of the market value of the truck on the date that the plaintiff stopped working for the defendant companies.

The plaintiff counters by arguing that the parties' agreement is not a bailment contract and that this action is one for breach of contract based on an employment agreement, for which the proper measure of damages is "the party's expectation." In support thereof, the

plaintiff cites the well-known legal principle that "[c]ontract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of the bargain by awarding a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed." (Internal quotation marks omitted.) *Colby* v. *Burnham*, 31 Conn. App. 707, 721, 627 A.2d 457 (1993). The plaintiff further contends that "the court is entitled to award [him] the value of the vehicle based on the actual money loss [he] experienced, considering all the circumstances and conditions, resulting from his being deprived of the truck. . . . That is what the court awarded [him] in this case, the actual money loss to [him], as illustrated in exhibit 2[14] entered into evidence, and which was the basis for the court's order." (Citation omitted; footnote added.) The plaintiff further acknowledges that the court awarded him damages for his investment in the truck and argues that, under either a breach of contract theory or a conversion/bailment theory as advanced by the defendant, the court was not "restricted to the market value in assessing damages . . . ."[15]

---

[14] It appears that the plaintiff's reference to exhibit 2 is a misnomer, as exhibit 2 is the registration of the truck in the name of A & A Transportation, LLC. Exhibit 1 is the bill of sale for the truck and exhibit 3 shows the costs for the upgrades and repairs that were performed on the truck, and the court referred to the figures in both exhibits 1 and 3 in making its damages award.

[15] The plaintiff also asserts that, "[e]ven if the market value is somehow the measure of damages in this case, the defendant never introduced any competent evidence at trial to mitigate [the] damages award as to the value of the truck. She did not introduce the truck's market value, given the truck's condition. She never introduced examples of comparable vehicles to claim it had a lower market value than the plaintiff claimed. She barely examined [the plaintiff] to determine why he stopped driving his truck and drove her truck instead. Instead of having a record to review on appeal, counsel for the defendant asks this Appellate Court to speculate as to why [the plaintiff] stopped driving his truck." We conclude that this argument is belied by the record, which patently shows that the self-represented defendant tried to elicit such information while cross-examining the plaintiff but was interrupted by the court and precluded from pursuing that line of questioning. See footnote 11 of this opinion. The record also reflects that the court

First, we briefly address the issue of whether the parties' arrangement constitutes a bailment and conclude that, under the material facts alleged in the complaint, as deemed admitted due to the defendant's default, a bailment did not exist. See *B. A. Ballou & Co.* v. *Citytrust*, supra, 218 Conn. 753. "A bailment involves a delivery of the thing bailed into the possession of the bailee, under a contract to return it to the owner according to the terms of the agreement. . . . A relationship of bailor-bailee arises when the owner, *while retaining general title*, delivers personal property to another for some particular purpose upon an express or implied contract to redeliver the goods when the purpose has been fulfilled, or to otherwise deal with the goods according to the bailor's directions. . . . In bailment, the owner or bailor has a general property [interest] in the goods bailed . . . . The bailee, on the other hand, has mere possession of items left in its care pursuant to the bailment." (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) Id.

In the present case, the complaint alleged that the parties entered into an "employment agreement," whereby title to the truck was to be transferred from the plaintiff to the defendant, who registered the truck with the Department of Motor Vehicles in the name of A & A Transportation, LLC, and, in the event the plaintiff's employment with the defendant companies ceased, the defendant would return title to the truck to the plaintiff. Because the plaintiff never retained title to the purportedly bailed good, i.e., the truck, the parties' transaction did not constitute a bailment. See id., 756. We conclude, therefore, that the proper measure of damages is for breach of contract, as sought and alleged in the complaint, the material allegations

unequivocally barred the defendant from entering any exhibits into evidence at the hearing.

of which were deemed admitted after the defendant was defaulted.

Next, we must determine whether the court applied an improper measure of damages in the present case by basing damages, in part, on the amount that the plaintiff had invested in the truck in 2021. The following standard of review and well established principles concerning damages for a breach of contract are relevant to our determination of this issue. "Although the calculation of the amount of damages is a factual determination, the formula used in making that calculation is a question of law." *Vermont Microsystems, Inc.* v. *Autodesk, Inc.*, 138 F.3d 449, 452 (2d Cir. 1998). Thus, "[w]e accord plenary review to the [trial] court's legal basis for its damages award." (Internal quotation marks omitted.) *Carrillo* v. *Goldberg*, 141 Conn. App. 299, 307, 61 A.3d 1164 (2013); see also *Whitney* v. *J.M. Scott Associates, Inc.*, 164 Conn. App. 420, 427–28, 137 A.3d 866 (2016) ("[w]hen . . . a damages award is challenged on the basis of a question of law, our review [of that question] is plenary" (internal quotation marks omitted)).

"It is axiomatic that the sum of damages awarded as compensation in a breach of contract action should place the injured party in the same position as he would have been in had the contract been performed [by the breaching party]. . . . [C]ontract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of the bargain by awarding a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed. . . . In determining the proper measure of damages, we are guided by the purpose of compensatory damages, which is to restore an injured party to the position he or she would have been in if the wrong had not been committed." (Citations omitted; internal quotation marks omitted.) *Whitney* v. *J.M. Scott Associates, Inc.*, supra,

164 Conn. App. 428. "Such damages, moreover, *are to be determined at the time of the breach. . . .* The plaintiff has the burden of proving the extent of the damages suffered. . . . Although the plaintiff need not provide such proof with [m]athematical exactitude . . . the plaintiff must nevertheless provide sufficient evidence for the trier to make a fair and reasonable estimate." (Citations omitted; emphasis added; internal quotation marks omitted.) *Little Mountains Enterprises, Inc.* v. *Groom,* 141 Conn. App. 804, 809–10, 64 A.3d 781 (2013); see also *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership,* 157 Conn. App. 139, 162, 117 A.3d 876 (same), cert. denied, 318 Conn. 902, 122 A.3d 631 (2015), and cert. denied, 318 Conn. 902, 123 A.3d 882 (2015); *Argentinis* v. *Fortuna,* 134 Conn. App. 538, 548, 39 A.3d 1207 (2012) ("[d]amages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty" (internal quotation marks omitted)).

"Ordinarily, when a court concludes that there has been a breach of contract, it enforces the broken promise by protecting the expectation that the injured party had when he made the contract." 3 Restatement (Second), Contracts § 344, comment (a), p. 103 (1981). "The injured party, however, is entitled to retain nothing in excess of that sum which compensates him for the loss of his bargain. . . . Guarding against excessive compensation, the law of contract damages limits the injured party to damages based on his actual loss caused by the breach." (Internal quotation marks omitted.) *Maloney* v. *PCRE, LLC,* 68 Conn. App. 727, 742, 793 A.2d 1118 (2002).

With these principles in mind, we turn to the circumstances of the present case. If the defendant had performed her obligation under the parties' agreement, she would have returned title to the truck to the plaintiff when his employment with the defendant companies

ceased. The court could have sought to place the plaintiff in the same position he would have been in had the agreement been performed by ordering the defendant to return title to the truck to the plaintiff, especially given that the truck is already in the plaintiff's possession. Instead, however, the court ordered monetary damages.[16]

In its written order, the court relied on the price the plaintiff paid for the truck in 2021 and the amount of money he invested in repairing it to calculate the plaintiff's damages. In particular, the court stated: "The plaintiff testified that his Volvo truck was purchased for $6000 and that he paid for necessary upgrades and repairs and that with all of the upgrades and purchase price he has invested $32,870.21, which he seeks to be returned to him. [The defendant] still retains title to the vehicle . . . . [The defendant] stated [that] the plaintiff took the vehicle from her place of business and that it now [is] in the possession of the plaintiff, which the plaintiff admits. The plaintiff seeks money damages and/or the return of the truck. Although, now [the defendant] is willing to transfer title back to the plaintiff, the court allowed the plaintiff to choose the relief that he wanted. The plaintiff has elected to be paid $32,870.21 and [to] allow the defendants to take possession of the truck. The court will therefore render judgment in favor of the plaintiff as against all defendants in the amount of $32,870.21, provided that the plaintiff allows the [defendant and/or the defendant companies] to take the truck in its present condition and that the plaintiff does no damage to the truck as it exists at the time of this order."

---

[16] The court stated: "The plaintiff seeks money damages and/or the return of the truck. Although now the [defendant] is willing to transfer title back to the plaintiff, the court allowed the plaintiff to choose the relief that he wanted. The plaintiff has elected to be paid $32,870.21 and [to] allow the defendants to take possession of the truck."

We conclude that the court used an incorrect measure of damages when it relied on the amount of the plaintiff's investment in the truck in 2021 in its determination of the damages award. Although the plaintiff correctly asserts on appeal that he is entitled to expectation damages for the defendant's breach of contract, he has incorrectly equated his investment with the truck's fair market value at the time of the breach and, thus, has misinterpreted expectation damages. As the Restatement (Second) of Contracts explains, expectation in this context means "protecting the expectation that the injured party had when he made the contract . . . by attempting to put him in as good a position as he would have been in had the contract been performed, that is, had there been no breach." 3 Restatement (Second), supra, § 344, comment (a), p. 103. In the present case, that would mean either the return of title to the truck to the plaintiff, who already has physical possession of the truck, or, a monetary award based on the truck's fair market value at the time of the breach.[17] The allegations of the complaint set forth the parties' agreement, and nothing therein demonstrates that the plaintiff expected to be paid for his investment in the truck upon

_____

[17] As we have stated in this opinion, damages for breach of contract must be determined at the time of the breach. See *Little Mountains Enterprises, Inc.* v. *Groom*, supra, 141 Conn. App. 809–10. There was no evidence presented at the hearing in damages from which the court could have or did determine the value of the truck at the time of the breach in 2023. Significantly, the complaint simply alleges that the plaintiff's employment ceased on January 28, 2023, and that the plaintiff demanded the return of the title to his truck. The breach occurred when the defendant failed to return the title to the truck to the plaintiff, but the record is devoid of any evidence indicating when that actually occurred. Even if we assume that it occurred shortly after January 28, 2023, when the plaintiff's employment ceased, there was no evidence in the record concerning the value of the plaintiff's truck at that time, which might have differed from the amount of the plaintiff's investment in the truck in 2021. Rather, the plaintiff submitted an exhibit showing the sale prices of trucks that he alleged were comparable to his truck, along with evidence showing the price he paid for the truck in 2021, along with the cost of the plaintiff's investment in the truck for the necessary repairs that were done to it prior to July, 2021.

the cessation of his employment with the defendant companies. Indeed, there is no reference to that investment in the complaint. Rather, a reasonable construction of the agreement, as alleged in the complaint, leads to a conclusion that the plaintiff, in entering into the agreement, reasonably expected that title to his truck would be returned when he ceased employment with the defendant companies. This means that his expectation when entering into the contract was that he would get a physical asset that had a market value, or, if that asset was no longer available, damages equal to the fair market value of the asset. That value might be greater or less than the amount the plaintiff invested in the vehicle. In fact, the fair market value might bear no relationship at all to the plaintiff's investment. This may be especially true given the wear and tear that necessarily occurred with the truck's use over the course of the agreement. The plaintiff has not directed this court to any authority supporting an award of damages for breach of contract based on a party's investment in an unreturned asset two years prior to the breach, without regard for the value of the asset at the time of the breach, and we are aware of no such authority.

Accordingly, because the court used an improper measure of damages when it awarded the plaintiff damages in the amount of $32,870.21, which was based on the plaintiff's total investment in the truck in 2021, almost two years prior to the defendant's breach of contract, the damages award cannot stand. "The conclusions reached by a trial court cannot stand if they are legally or logically inconsistent with the facts found or if they involve the application of an erroneous rule of law material to the case," such as an incorrect measure of damages. *Falco* v. *James Peter Associates, Inc.*, 165 Conn. 442, 447, 335 A.2d 301 (1973); see also *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, supra, 157 Conn. App. 145 (damages award could

not stand and new hearing in damages was necessary when court employed, in part, incorrect measure of damages). Because the defendant did not answer the complaint or file a notice of defenses, she was deemed to have admitted that she breached her agreement with the plaintiff, and she is therefore liable to the plaintiff for, at least, nominal damages. The damages awarded to the plaintiff, however, impermissibly put him in a better position than he would have been in the absence of the breach. See *Argentinis* v. *Fortuna*, supra, 134 Conn. App. 559. For these reasons and those stated in part I of this opinion, a new hearing in damages is necessary.

### III

The final issue we must address is "the scope and effect of our finding of reversible error." *Gino's Pizza of East Hartford, Inc.* v. *Kaplan*, 193 Conn. 135, 142, 475 A.2d 305 (1984). In his appellate brief, the plaintiff contends that, if the record demonstrates error by the trial court, this court is limited to reversing the judgment as to the defendant only because the defendant companies "never appeared, were not part of the trial, and are not part of this appeal." The defendant responds that the rights of all the parties in the present case "are interwoven because, by virtue of the defaults, it is undisputed that [the plaintiff] had a contract with all three defendants and that all three defendants breached that contract by the same act—[the defendant's] declining to return the title [upon the plaintiff's] cessation of employment . . . . And the trial court's judgment is the basis of all the parties' rights because it was rendered for [the plaintiff] against all three defendants in a single amount . . . . Because [the plaintiff's] claim is the same against all defendants, and the same judgment [was rendered] against all defendants, all defendants are entitled to benefit from a remand . . . ." (Footnote

omitted.) Under the circumstances of this case, we agree with the defendant.

"Although Connecticut recognizes the general rule that a nonappealing party is bound by the decision of the lower court, we also have recognized that there are times when a nonappealing party can benefit from an appellate court's determination even though that party did not participate in the appeal. . . . [W]hen the rights of all the parties are interwoven or when the erroneous legal decision of the lower court forms the basis for all of the parties' rights, the nonappealing party is entitled to the benefit of the appellate court determination." (Internal quotation marks omitted.) *United Public Services Employees Union, Cops Local 062* v. *Hamden*, 209 Conn. App. 116, 117 n.1, 267 A.3d 239 (2021); see also *Gino's Pizza of East Hartford, Inc.* v. *Kaplan*, supra, 193 Conn. 137–44.

We conclude that this exception to the general rule is applicable in the present case. Here, the court made a single award of damages against the defendant and the defendant companies, which we have concluded was based on an erroneous rule of law because the court applied an incorrect measure of damages. Furthermore, leaving the damages award against the defendant companies in place while ordering a new hearing in damages as to the defendant could result in inconsistent judgments where the plaintiff is awarded different damages for the same breach of contract, one of which would be inaccurate as a matter of law. Consequently, because the rights of all the parties are interwoven and the erroneous legal decision of the court formed the basis for the award of damages against all of the defendants, that damages award cannot stand, even as to the nonappealing defendant companies.[18]

---

[18] See, for example, *United Public Services Employees Union, Cops Local 062* v. *Hamden*, supra, 209 Conn. App. 118–19, in which this court applied the exception to the general rule to a nonappealing party after determining that the trial court used an incorrect legal standard in determining whether

The judgment is reversed as to the award of damages against all defendants and the case is remanded for a new hearing in damages; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

to grant an application for a temporary injunction that sought to prevent the nonappealing party from proceeding with a disciplinary hearing.